SINCLAIR REFINING COMPANY *v.* DUFF.

4-4085

Opinion delivered December 16, 1935.

*Malcolm W. Gannaway*, for appellant.
*Majors, Robinson & Boyer*, for appellee.

BAKER, J. R. N. Duff sued the Sinclair Refining Company in the circuit court of the Dardanelle District of Yell County, alleging that he had suffered injuries occasioned by the alleged defective condition of the pumping machinery used in the refining company's plant at Dardanelle to pump gasoline and kerosene from tank cars into stationary tanks. He recovered a judgment, and the refining company has appealed. Without detailing the evidence, it must suffice to say that the facts are substantially as follows:

Duff had worked at the same place for the Pierce Oil Company, the predecessor of the Sinclair Refining Company. At the time he was injured he had been at

the same place of business for ten years or more. The pumps that were first used to transfer the kerosene and gasoline from tank cars to the stationary tanks were operated by hand. Later Duff used his own gasoline engine, which he placed on a concrete block just outside the building. A belt from this engine passed through the wall to a pulley upon a power shaft. This power shaft rested upon a frame in the shape of inverted V's. There was a wheel upon this shaft at one end about twenty-eight or thirty inches in diameter. Near the edge of this wheel another shaft or pitman rod was attached by a bolt with a large nut that would come below or outside of the lower edge of this wheel when the pumping appliance was in operation. The other end of this shaft or pitman rod was attached to and operated the pump.

In June, before this accident occurred in October, the refining company had a new floor put down over the old floor that had been in use for many years. When this new floor was placed under this pumping apparatus, the nut upon the bolt holding the pitman rod upon the wheel would strike the new floor, and would not permit the wheel to turn beyond that point. In order to use the pump, Duff cut away the floor under the wheel at the point where the nut holding the pitman rod would strike. At least a sufficient amount of the flooring was cut away so as to permit the free operation of the pumping machinery, as it had been used prior to the putting in of the new flooring.

The testimony as abstracted here does not show to what depth or width this hole was cut under the wheel, or under the pitman rod where the nut would strike the floor, and as to that particular proposition we can only assume that there was only a sufficient amount cut away to allow the free turning of the wheel.

Kerosene or gasoline was received at this station, perhaps not oftener than once in each three or four weeks, and after the new floor was down the pumping appliances were used perhaps only five or six times prior to the date of the injury. There is no proof abstracted as to who installed that particular bit of pump machinery. Duff testifies that the parts were prepared

by a local blacksmith or mechanic, and he says that he did not install this appliance and did not own the parts. It is admitted, however, that Duff owned the engine that furnished the power for the pumping; that he furnished the gasoline to operate the engine; that the company owned the pumps. We proceed upon the assumption that the Sinclair Refining Company was the owner of this alleged defective appliance. It had been in the place of business for ten or twelve years, operated exclusively, as we understand, by Duff.

After the Sinclair Refining Company had bought the Pierce property, it put down the new floor. Shortly thereafter Duff said that he complained to one of the traveling agents or superintendents of the Sinclair Refining Company, a Mr. Wood, about the fact that the floor had been built up so closely under the wheel that it had become dangerous, and that a guard should be placed over or at the wheel on that account. He said that there was a promise to repair or correct this defect. According to his pleadings, this promise was made some three or four months prior to his injury. In his testimony he says that on occasions when he would see this traveling agent for the company, he would complain about this condition. However, he continued to use the appliances until about October 6th. At that time he says he was leaning over the machine to oil some of the parts thereof, when he unconsciously slipped his foot under the edge of the revolving wheel, and his foot was caught by the nut on the bolt, holding the pitman rod, that the bones were broken in some of his toes, and the arch broken down.

The negligence really relied upon was the failure to place or supply a guard for this wheel after the floor had been built up close or near to the bottom side or rim of the wheel. It is contended that the promise of appellant's agent to supply this part or make this repair prevents the application of the doctrine of assumed risk to defeat a recovery.

It is argued in the brief that one could observe the condition of the floor at the point where the wheel was revolving only by stooping low and making a careful

investigation. This may be true, but, even though it should be, the appellee knew more about the bad condition that existed than anybody else. He had been in daily contact with this machinery. He had operated it once or twice a month for many years. When it was changed by putting in another floor an inch and three-fourths in thickness, he was perhaps the first to observe this changed condition. If that created a defect, he was the only one that attempted to correct it. If these facts are not undisputed, they, at least, constitute the most favorable statement that can be made to support the judgment here.

The only proposition the appellant really insists upon as error is that the trial court should have instructed a verdict for the defendant, but refused to do so. This is the only matter we will consider upon this appeal. Appellee did not make the contention, and, of course, could not do so, that appellant owed him any duty to instruct him or advise him as to any dangerous condition of this pumping appliance. There is no pleading or proof abstracted as tending to show what kind of guard should have been provided according to appellee's contention. Appellee knew the exact condition of the wheel and its relation to the floor when in operation. He had helped in part at least to bring about that condition. He negligently placed his foot at the point or place where it would be hit and injured. This was not the conduct or act of the appellant or any of its agents. To argue that the appellant company should have anticipated an injury arising out of the condition above stated is to insist that the appellant company was negligent in not foreseeing or anticipating the negligence of the appellee. Appellee was acting deliberately. There was no emergency. He knew no guard had been placed there, although he said that one had been promised. If the appellee made his complaint about the condition that prevailed within a reasonable time after he had cut away part of the floor with his chisel, then it was approximately four months later before the injury occurred.

We cannot presume and do not presume that the guard contemplated was of such kind or character that

it could not have been made and put in use within a very short time after complaint was made in regard thereto. If it were the duty of the appellant company, under the conditions here stated, to make, construct, or place a guard about the wheel, which point we do not decide, appellee knew within a reasonable time after he had made his complaint whether he might rely any longer upon the promise alleged to have been made by Mr. Wood, the traveling agent who visited Duff shortly after the repairs were made creating the alleged dangerous condition.

Duff was a man of normal mind and intelligence, thoroughly well experienced in the operation of this plant, and hence there was no duty to warn. We are unwilling to say, under the facts developed here that there was negligence as a matter of law to fail to place a guard at this wheel. *Pekin Stave & Mfg. Co.* v. *Ramey,* 104 Ark. 1, 147 S. W. 83; *Wilcox* v. *Hebert,* 90 Ark. 145, 148, 118 S. W. 402.

If we should hold that appellant should have placed or constructed a guard, we would be impelled to hold, from the undisputed proof tendered, that the sole negligence causing the injuries was that of the appellee who, without looking, put his foot in the place of known danger.

The only difference between this case and that of *Ward Ice Company* v. *Bowers,* 190 Ark. 587, 80 S. W. (2d) 641, is that in the Ward Ice Company case Bowers, in attempting to kick a piece of ice in the scoring machine, kicked or inserted his foot farther into the machine than he intended it should go and thereby suffered the injuries he complained of. He could see the saws and knew if his foot came in contact with them it would be cut. In this case Duff not only could see the revolving wheel, but he knew exactly what it would do to his foot if he inserted his foot in the hole he had cut out. He knew whether or not the place was so dangerous as to need or require a guard for his own safety. If the guard was a simple one he might have made it himself with no particular trouble or expense. If it were expensive, or complicated, so as to require expert workmanship in making or placing it, and the danger was such as to warrant it, then, after a reasonable time had elapsed after the alleged promise

to repair, if the danger justified, and he did not want to assume the risk, he should have quit rather than to have worked under the menace of such imminent danger.

However, we do not believe such condition prevailed. We assume, according to the verdict of the jury, that he complained to Mr. Wood, and asked about a guard for the wheel. It was not placed within a reasonable time, and at the time of the injuries he knew that it was not there, and, having continued to work under the conditions, he assumed the risk. *Togo Gin Co.* v. *Hite,* 190 Ark. 454, 79 S. W. (2d) 262; *Ward Ice Co.* v. *Bowers, supra; Williams Cooperage Co.* v. *Kitrell,* 107 Ark. 341, 155 S. W. 119; *La. & Ark. Ry. Co.* v. *Miles,* 82 Ark. 534, 103 S. W. 158; *Headrick* v. *H. D. Cooperage Co.,* 97 Ark. 553, 589, 134 S. W. 957.

Under the foregoing conditions as established by the undisputed evidence, the appellee not only assumed the risk incident to his employment, but his own negligence was the proximate cause of his injuries.

The case has been fully developed, thoroughly well tried, and it would seem that the appellee has presented the strongest phases of his case of which it is susceptible.

The court erred therefore in a failure to direct a verdict for the defendant.

Judgment is reversed, and the cause is dismissed.