MISSOURI PACIFIC RAILROAD COMPANY *v.* SANDERS.

4-4632

Opinion delivered May 3, 1937.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellant.

*John E. Miller, C. E. Yingling* and *Tom W. Campbell,* for appellees.

BUTLER, J. Two separate actions brought by John Q. Adams, administrator, and Mrs. Katherine F. Sanders, administratrix, for damages for the deaths of their respective intestates were consolidated for trial in the court below, where there were verdicts and judgments in favor of the two appellees, and, as consolidated, presented here on appeal.

The casualty out of which this lawsuit arose occurred about 10:30 a. m., on October 23, 1931, at a railroad crossing in the village of Higginson, Arkansas. E. H. McDaniel was driving a Buick sedan and Alfred M. Sanders was riding on the seat beside him. They were traveling south on highway 67E which runs parallel with the line of appellant railroad company. As they turned from this highway onto highway No. 11, which crosses the railway approximately at right angles, their automobile stalled or stopped at, or about, the center of the railroad track and a moment after was struck by a south-bound passenger train. At this point the railway consists of two main tracks running north and south. The track on the west is used for south-bound passenger trains. To the east of this track is one used for north-bound passenger trains.

Highway No. 11 crosses directly over these tracks from west to east. Parallel with the tracks, on the west side thereof, runs highway No. 67E. This highway intersects with highway No. 11 in the town of Higginson,

which highway crosses the tracks as aforesaid, and is the principal crossing in that town. Between highway No. 67E and the main line of railway, one hundred and forty yards north of the crossing, is situated a depot, a building 20 x 60 feet. About 100 yards north of the depot is a track known as a "passing" track which connects with the several tracks by switches. Also, about 100 feet north of the depot and between it and the passing track, the Rock Island Railway crosses the Missouri Pacific. Approximately 980 feet north of the crossing, on the same side of the railway as the depot, is a temporary track. At the time of the accident in question there were a number of bunk cars standing on the temporary track. A train of cars of some description was on the passing track about 100 yards above or north of the depot, its engine being engaged in switching operations north of the Rock Island crossing. A local freight train was standing on the east track headed north and extending some distance south of the depot, which distance was estimated by some of the witnesses at about fifty yards. To the west of the railroad tracks, on the same side as highway 67E, is the usual line of telegraph and telephone poles.

The above situation is established by the unanimity of the testimony and we find but little dispute in that relating to the movements of the passenger train and the automobile immediately preceding, and at the time of, the collision. The train was traveling at a speed of 65 to 70 miles per hour. The usual blasts of the whistle were given for the crossing and were continued at least until the train reached the Rock Island crossing. Appellees contend that from that point no further signals were given. We think the evidence leaves this question in doubt when viewed in the light most favorable to the appellees. It seems, however, that there is some evidence tending to show that the whistle was not blown or bell sounded from the depot south to the crossing. On the particular question of where the operatives of the train ceased to give the alarm, there is conflict in the evidence. Many witnesses corroborated the testimony of the engi-

neer to the effect that the whistle was blown continuously from above the Rock Island crossing until the crossing of highway No. 11 was reached. However, we must accept the testimony evidently accepted by the jury that there was in fact no signal given after the train passed the Rock Island crossing.

On the question as to the extent of the view to the north of one approaching and entering the crossing from the west, as did appellees' intestate, there is some conflict in the evidence. All the witnesses, however, testified that there are no obstructions to prevent a view of the track to the north one-fourth of a mile from where the automobile turned from highway No. 67E onto highway No. 11, or from that point to the railroad as far north as the depot. At eighteen feet west of the track a point is reached where the view of the tracks beyond the south end of the depot is obstructed, and, at approximately fifteen feet west of the tracks, the view is unobstructed for a considerable distance further north of the depot.

There is no dispute in the testimony relating to the movement of the automobile in which McDaniel and Sanders were riding just before, and at the time, they were killed. When they reached the intersection of highways Nos. 67E and 11 and turned to go over the crossing, they were apparently oblivious to the train approaching from the north although it is quite certain that all persons within the vicinity at that time knew of its approach and that its whistle was blowing, and realized from the movement of the automobile that a collision was imminent. One of these in particular, Banks Pilkington, testified that he was on the west side of the track approaching the crossing and intending to pass over it when he saw the approaching train and heard it hitting the rails. He had some business to attend to across the tracks, but when he heard the train whistle he perceived, as he expressed it, that he "was going to be short on time * * * and I decided I had more time than they did and I would wait for them to cross and then go ahead." Just at this moment witness saw the automobile in question about

forty feet from the railroad crossing, it having just turned off highway 67E toward the crossing. At that particular point the view of the occupants of the car was obstructed by the depot and witness attempted to warn them of the imminence of the danger by shouting and waving his arms. His efforts to warn was seen by another witness, but the occupants of the automobile paid no attention to him, and passed so close to him that he could have touched the side of the car. It appeared to witness as if both men in the car looked toward the north, but they did not stop or slacken speed, driving directly upon the railroad in front of the oncoming train, where, for some reason unknown to any one, the car came to a stop. At the time the automobile reached the point where witness was standing, some twelve or fifteen feet from the tracks, the engine was in proximity to the depot. The automobile was traveling at a slow rate of speed—estimated at from twelve to fifteen miles per hour—from the time it left highway 67E until it reached the railroad track.

A short interval of time elapsed between the stopping of the automobile on the track and the impact of the train upon it, which, in the opinion of some of the witnesses, was sufficient for the automobile to have cleared the track if it had not stopped. A number of witnesses were in the vicinity at the time of the accident and in somewhat varying terms described the incident, but we think the fair effect of these statements presents the situation as above narrated.

At the close of the testimony, the appellants moved for a directed verdict, and the refusal of the trial court to so direct is the principal ground presented for reversal. This is based upon the contention (a) that no negligence on the part of the appellants is established, and (b) that the negligence of the driver of the automobile was of a degree equal to, or greater than, that of the operatives of appellants' train. The appellees controvert this contention and, in addition, urge as a ground for recovery that the testimony on the part of appellants fails to establish the keeping of an effective look-

out by the operatives of the train. Appellees also contend that had the train been operated with due care, the perilous position of the automobile and its occupants could have been seen by appellants' operatives in time to avoid the collision.

The testimony of the engineer in charge of appellants' train No. 219 was to the effect that he was keeping a constant lookout ahead as the train approached the town of Higginson; that he saw the automobile as it reached highway No. 11 and turned east in the direction of the crossing. This testimony cannot arbitrarily be disregarded and must be accepted as true unless contradicted by other evidence, either direct or circumstantial. This rule is established by many of our cases, one of the latest being that of *Missouri P. Rd. Co. v. Trotter,* 184 Ark. 790, 43 S. W. (2d) 762. We perceive no evidence of a direct or circumstantial nature tending to dispute this testimony. When the engineer saw the automobile it was in a place of safety traveling on the highway parallel to the railroad and when it turned to enter the crossing, if, as contended, the occupants could not see the train when eighteen or twenty feet from the railroad because of the depot, for the same reason the operatives of the train could not have seen the approach of the automobile at that time. The fact appears to be clear that no lookout by the operatives of the train would have disclosed to them the danger to the car and its occupants except at a time when the car was so near the track, and in the act of entering upon it, that to avoid striking it was not humanly possible.

The proof discloses that appellants' southbound train No. 219 was one of its fast passenger trains running on a fixed schedule, and while its rate of speed at the time of the accident was high, it was not unusual for trains of that character. Therefore, no negligence is shown on the part of appellants as to this question. In fact, the only question from which a conclusion of negligence might be drawn is that the operatives of the train did not continue to blow the whistle until the crossing was reached. There is some evidence, although against the

great preponderance, of this neglect, but, if it be conceded that from the Rock Island crossing to highway No. 11 the whistle was not blown, still this was not the proximate cause of the accident. The Rock Island railroad crossing is 520 feet north of highway No. 11 and it is undisputed that at that point the whistle was being blown at a time when the train was in plain view of a person traveling on highway No. 67E and reaching the intersection of highway No. 11. The view of the tracks is obstructed at only one point and after that point is passed the view of the tracks is again clear. Therefore, if appellees' intestates had been taking the slightest precaution for their own safety, the collision would not have occurred. It is inescapable that their negligence was the proximate cause of the injury. This being true, it necessarily follows that under the doctrine of the cases cited in *Missouri Pacific Rd. Co.* v. *Brewer, ante,* p. 754, 102 S. W. (2d) 538, there can be no recovery and the trial court erred in not directing a verdict at the request of the appellants. See, also, the recent case of *Sinclair Refining Co.* v. *Duff,* 191 Ark. 888, 88 S. W. (2d) 322.

Judgment reversed, and cause dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.