KANSAS CITY SOUTHERN RY. CO. v. RAY.

No. 11551.

Circuit Court of Appeals, Eighth Circuit.

Feb. 20, 1940.

Joseph R. Brown, of Fort Smith, Ark. (James B. McDonough, of Fort Smith, Ark., on the brief), for appellant.

Ben Shaver, of Texarkana, Ark. (James D. Shaver, of Texarkana, Ark., and James H. Williams, of Ashdown, Ark., on the brief), for appellee.

Before WOODROUGH and THOMAS, Circuit Judges, and NORDBYE, District Judge.

WOODROUGH, Circuit Judge.

This suit arises out of a railroad crossing accident in which the plaintiff's intestate was killed. She recovered judgment as Administratrix against the railroad company in the sum of $2,000, and the railroad company appeals.

The defendant's railroad runs in a southerly direction along the western border of Arkansas, from Mena, Arkansas, to Texarkana, and into the state of Texas, and U. S. Highway No. 71 which runs generally in a north and south course crosses the track at grade about three-fourths of a mile north of the town of Wickes, Polk County, Arkansas. It appears that on the morning of August 12, 1938, the deceased was driving a one-and-a-half ton trailer type International truck loaded with 2,266 feet of green pine lumber weighing about 12,463 pounds in a northerly direction upon Highway No. 71, intending to pass over the railroad crossing. He was familiar with the highway and the railroad crossing on the route. For a distance of about three-fourths of a mile the highway ran about parallel with defendant's track and about 400 feet to the east of it, and then turned on a right angle and on a slightly descending grade which dropped 3.3 feet in 100 horizontal feet.

At the crossing the railroad right of way was 100 feet wide and although there were some weeds growing at the side of the road there was no testimony that a southbound train would not be visible from a truck on the highway approaching the crossing from the east for a considerable distance before reaching the crossing.

The deceased made the turn in the highway and drove west towards the crossing until he came to a distance of within 50 or 60 feet of it. At that point the tire marks on the surface of the road, which was gravelled, showed that he had applied his brakes and had swerved to his left (south), but the right front wheel of his truck crossed the first rail of the track some 20 to 30 feet south of the crossing and had just about reached the second rail when the defendant's southbound passenger train collided with the truck cab and killed the driver instantly. The truck cab was crushed and carried along the track about 50 yards. The semi-trailer was disconnected from the cab and left near the place of collision. While it appeared from the evidence that the truck itself was equipped with brakes which were in good condition, the trailer which bore the 12,463 pound load of lumber was without brakes. The court instructed the jury that the Arkansas law required the trailer to be equipped with brakes (Pope's Digest, Sec. 6784) and that if the collision was due solely and proximately to the fact that it was not so equipped there could be no recovery.

There was no eye witness to the occurrence except the fireman, who was in the engine cab keeping a lookout on the left hand or east side of the train as it proceeded south towards the crossing. The engineer was on the west or right hand side of the cab and his view to the east was cut off by the boiler of the engine. The fireman testified that he saw the truck and trailer when the train was about 400 feet away from the crossing but he did not anticipate any danger as the truck was going slow in the center of the highway and he thought it was going to stop. But when the train had reached a distance of about 200 feet from the crossing, the witness noticed the truck was in distress and was getting off the highway in order to try to stop, and although it was going at a low rate of speed, it appeared to the witness that it was not going to be able to stop. He "hollered at the engineer and he applied the brakes in emergency", but the truck "got down to the track and off the highway", "over the first rail and up against the second rail when we hit him".

The train was proceeding at its customary speed of about 40 miles an hour. The brakes take about two seconds to act after they are set and the locomotive ran about 600 feet beyond the crossing before it came to a stop. The train was stopped in two train lengths.

There was conflict in the evidence as to whether the train whistle had been blown for the crossing, but the testimony of the fireman that the bell was being rung continuously for at least half a mile before the train reached the crossing was not directly controverted though a witness in the vi-

cinity testified that he did not notice whether the bell was rung or not.

 The appellant insists that the evidence established as a matter of law that deceased's negligence was the direct and proximate cause of the collision and death, and that there was no substantial evidence to sustain the verdict under the comparative negligence statute of Arkansas. Pope's Digest 1937, Sec. 11153.

Upon review of the many grade crossing accident cases considered and passed on by the Arkansas Supreme Court, we have reached the conclusion that the contentions should be sustained. We note the statement in the recent opinion of that court in Missouri Pacific R. Co. v. Price, Ark., 133 S.W.2d 645, 648, decided November 27, 1939, "It seldom happens that two crossing collisions are exactly alike. Each must be tried in view of the prevailing facts and circumstances, and the result must be tested by accepted principles of law", and we think that the facts here presented compel the application of the same principles and the same conclusions reached by the court in Missouri Pacific R. Co. v. Davis, 197 Ark. 830, 125 S.W. 2d 785. The deceased in this case approached the crossing with which he was familiar with a heavy load on a slight down-grade. The train was giving warning of its approach at its ordinary speed by continuous ringing of the bell [1] and there is nothing to contradict the proof that the deceased was fully aware of the approach' of the train when he was at least 50 or 60 feet away from the crossing. He failed to have the truck under such control that he could stop it or turn it off the road before it reached the railroad track. That such track is a place of danger which must be approached with care and caution and with the means of locomotion under control need not be reiterated. The want of care on the part of the decedent, which in law is called negligence, is obvious. While on the part of the railroad company there is no substantial evidence of any deviation from the ordinary and usual operation of a train. The ringing of the bell was compliance with the statute as the court instructed.[2] The speed was moderate. The fireman was on watch and saw the truck apparently slowing down to a stop at a safe distance. He assumed, and under the Arkansas decisions had a right to assume, that the traveler would exercise due care for his safety. Missouri Pacific R. Co. v. Lemons, Ark., 127 S.W. 2d 120, loc.cit. 122. He gave the alarm and the brakes were applied to the train immediately upon his becoming aware of the deceased's danger. The verdict and judgment being without substantial evidence in support thereof must be reversed. As the evidence affirmatively established that the negligence which caused the injury was that of the deceased, judgment of dismissal should be entered. It is so ordered.

Reversed.

---

[1] Jemell v. St. Louis·S. W. R. Co., 178 Ark. 578, 11 S.W.2d 449; Missouri Pacific R. Co. v. Sanders, 193 Ark. 1099, 106 S.W.2d 182; compare Missouri Pacific R. Co. v. Nelson, 195 Ark. 883, 115 S.W.2d 872.

[2] "You have been instructed that the law requires employees operating trains in this State to blow the whistle or ring the bell as trains approach crossings." F. W. Woolworth Co. v. Carriker, 8 Cir., 107 F.2d 689, 692.