INABNETT *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered March 9, 1901.

1. RAILROAD—ACCIDENT AT CROSSING—NEGLIGENCE OF ENGINEER.—In an action against a railroad company for damages caused by defendant company's negligence in blowing a whistle and allowing steam to escape from its engine at a highway crossing, whereby plaintiff's horse was frightened, and plaintiff injured, it was error to instruct that defendant's liability would depend upon whether there were circumstances within the knowledge of defendant's engineer which admonished him of plaintiff's danger, (1) because the instruction ignores the statutory duty of the railroad company to keep a lookout for travellers at highway crossings, and to exercise reasonable care to avoid injuring them; and (2) because the test of negligence is not what the engineer in charge did or knew, but what a reasonably prudent engineer would have known and done under the same circumstances. (Page 132.)

2. SAME—INSTRUCTION.—In case of a traveler injured at a highway crossing, it was error to instruct the jury that defendant's employees "were not bound to take notice of the mere presence of the plaintiff and his horse in close proximity to the railway," as it is the duty of a railroad to exercise reasonable and ordinary care to observe travelers about to cross at a highway crossing. (Page 133.)

3. SAME—ABSTRACT INSTRUCTION.—An instruction that "mere proof that the train employees unnecessarily blowed the whistle or let off steam in close proximity to a team of horses does not necessarily establish negligence," not being predicated upon the facts in evidence, should not have been given. (Page 134 )

Appeal from Nevada Circuit Court.

JOEL D. CONWAY, Judge.

*L. A. Byrne,* for appellant.

Appellee was bound to the exercise of all the measures and means of precaution which the highest prudence could suggest and which was in its power to employ. 101 Mo. 36; 98 Mo. 50; 8 Am. & Eng. R. Cas. 280; 65 Mo. 22; 58 N. Y. 451; 91 Ky. 434; 29 Md. 252; 26 Atl. 937. The fourth instruction for appellee was erroneous as a proposition of law. 2 Th. Neg. 1235-6; Cooley,

Torts, 668, 671; 60 Ark. 409; 8 Am. & Eng. R. Cas. 262; *id.* 280; 11 Am. & Eng. R. Cas. (N. S.), 70; 40 Minn. 544; 73 Ga. 810; 53 Fed. 219. It was error to give it for the further reason that it was abstract. 14 Ark. 530; 31 Ark. 684, 699; 37 Ark. 591; 13 Am. & Eng. R. Cas. (N. S.), 469. The sixth instruction for appellee was also erroneous. 34 Mo. App. 57; 125 Ill. 127; 39 Ill. App. 67; 47 Ill. 298; 88 Ill. 431; 60 Ga. 492; 88 Pa. St. 405.

*Dodge & Johnson,* for appellee.

To constitute negligence on the part of the engineer, there must have been circumstances within his knowledge, admonishing him that injury will probably result if the act is done. 75 Tex. 19; 32 N. E. 209; 55 Me. 438; 42 Ill. App. 469. There is no error in the fourth instruction. 5 Am. & Eng. R. Cas. (N. S.), 192; 57 N. W. 545; 39 S. W. 415; 78 Pa. St. 219. No negligence was shown. 104 Ind. 526; 85 Wis. 570; 7 Ind. App. 179; 42 Ill. App. 469; 56 S. W. 1; 130 N. Y. 631; 91 Ala. 382; 51 Cal. 605; 55 Me. 208; 114 Mass. 358; 59 Minn. 458.

Wood, J. This suit was brought by Inabnett to recover damages for personal injuries alleged to have been caused by the negligence of the railway company in blowing the whistle and in allowing steam to escape from the steam cocks of its engine while plaintiff in his buggy upon the highway was approaching the public crossing in the city of Texarkana. It is alleged that the unnecessary blowing of the whistle greatly frightened plaintiff's horse, and that, while he was endeavoring to calm same, plaintiff observed an engineer on the engine nearest to him, and saw that the engineer was apprised of plaintiff's danger, but, without regard to plaintiff's safety, the engineer in a grossly careless manner opened the steam cocks of his engine, and began to move the same, which caused the plaintiff's horse to take greater affright, and caused him to suddenly turn from the highway, and to spring down a deep enbankment, whereby plaintiff, in an attempt to extricate himself from the danger of the situation, was thrown from the buggy, and seriously hurt, etc.

The answer denies all material allegations, and sets up contributory negligence. Without giving the evidence in detail, it is sufficient, for the purpose of this opinion, to state that there was proof on the part of the plaintiff which tended to support the allegations of his complaint. The jury might have found from plaintiff's testimony that the agents of the defendant knew, or could

have known by the exercise of ordinary care and prudence, that the blowing of the whistle, and especially the escaping of steam from the steam cocks of the engine, under the circumstances detailed by the plaintiff, were well calculated to frighten plaintiff's horse, and to endanger plaintiff and cause the injury of which he complains. There was evidence also to justify the verdict. Were the jury properly instructed?

The court gave on behalf of the defendant the following among other instructions: "(3). The jury are instructed that negligence is not to be imputed to the railway company merely from the blowing of a whistle, or causing steam to emit from an engine, even though the same may occasion fright to a horse or horses, unless the same was done under circumstances that made the act an imprudent and improper one upon that occasion, and the jury would have no right to impute negligence to an engineer under such circumstances, unless there were circumstances in his knowledge at the time admonishing him that injury would probably result if the act was done; and in this case, unless the jury find from the testimony that at the time of the accident in question there was something in the circumstances of the plaintiff's presence upon the track, or in the conduct of the horse, as seen by the engineer, which would have admonished him in time to have prevented it, or that giving of signals or permitting the steam to emit from his engine was likely to cause the horse to frighten, then he would not be guilty of negligence, even if you find such facts. (4). The court instructs the jury that mere proof that the train employees unnecessarily blowed the whistle or let off steam in close proximity to a team of horses does not necessarily establish negligence. (8). The court instructs the jury, in determining the question of the negligence of defendant's servants, they should take into consideration all of the facts and circumstances, that defendant's servants and engineers were not bound to take notice of the mere presence of plaintiff and his horse in close proximity to the railway, nor that that fact would raise a presumption that the horse would become frightened at the use of steam, but there must have been something at the time in the conduct and actions of the animal which indicated to the engineer that such results would probably follow before he could be charged with negligence."

The third and eighth ignored the rule which enjoins upon railroads a high degree of care for the protection and safety of travelers upon the highway at and in proximity to public crossings.

in cities.   It is their positive duty to keep a lookout for such trav-
elers, and to use every reasonable precaution consistent with the
proper operation and management of their trains to avoid injuring
them.   There might not be any circumstances in the knowledge of
the engineer, admonishing him that injury would probably result
from the unnecessary blowing of a whistle or escaping of steam.
Yet such circumstances might exist, and the engineer's ignorance
of them be on account of his wilful or negligent failure to do what
the law requires; *i. e.,* to keep a lookout for them, and then to do
whatever reasonable prudence would dictate to avoid injury to
travelers.   *Hilz* v. *Mo. Pac. Ry. Co.,* 101 Mo. 36; *Frick* v. *St.
Louis, etc., R. Co.,* 8 Am. & Eng. R. Cas. 280; *Weber* v. *Ry. Co.,*
58 N. Y. 451-62.

Nor does the law gauge the standard of negligence by what the
engineer in charge in any particular case did or knew.   It is
broader and more reasonable than that.   Negligence is determined
in cases of this kind by what any reasonably prudent and careful
engineer would or should have known and done under the circum-
stances in proof.   Both the third and eighth convey the idea that,
unless there was something in the circumstances of the plaintiff's
presence upon the track, or in the conduct of the horse "as seen
by the engineer," which would have admonished him of plain-
tiff's danger, then he was not negligent in doing acts complained
of.   This, too, regardless of whether he had exercised that prudence
which any reasonably careful man would have exercised to become
acquainted with the circumstances.   In this respect the instruc-
tions were radically wrong, and wholly inconsistent with the in-
structions which the court had given at the instance of plaintiff,
and which correctly stated the law.   *Ry. Co.* v. *Lewis,* 60 Ark. 409.

Furthermore, the eighth instruction declares that the em-
ployees of the railroad "were not bound to take notice of the mere
presence of the plaintiff and his horse in close proximity to the
railway."   This was well calculated to mislead.   The duty of rail-
roads is to exercise reasonable and ordinary care to observe trav-
elers about to cross the railroad upon the highway.   Here the
travelers have a right to be, and they must be expected to be con-
stantly passing.   They are "ever present," so to speak, and the
railroad employees must exercise that diligence which the law
requires to observe them.   "The care and skill, to be reasonable,"
it is said, "must be proportioned to the danger and multiplied
chances of injury."   3 Elliott, Railroads, 1156, and authorities

cited.   It is generally for the jury to determine whether such care has been exercised.

The fourth, to say the least of it, was not predicated upon the facts in evidence, and was therefore abstract, and should not have been given.   Taken in connection with others, however, it may not have been prejudicial.

For the error in giving the third and eighth instructions for appellee, the judgment is reversed, and the cause is remanded for a new trial.