CROSSETT LUMBER COMPANY *v.* CATER.

4-6093                                          144 S. W. 2d 1074

Opinion delivered November 25, 1940.

*Lamar Williamson, Adrian Williamson* and *Gaston Williamson,* for appellant.

*Ovid T. Switzer* and *Clinton J. Campbell,* for appellee.

GRIFFIN SMITH, C. J.   The appeal is from two judgments, each for $750—one to compensate personal injuries received by Mrs. J. W. Cater when, as a guest of Mrs. R. O. Brown, the automobile in which she was riding struck or was struck by a Crossett Lumber Company

switch engine. The other judgment is in favor of J. W. Cater to compensate loss of his wife's services and companionship, and for reimbursement of sums expended as a consequence of Mrs. Cater's injuries.

The switch engine was being permissively operated on Missouri Pacific tracks[1] which traverse Crossett east-west.

Sixth street is 62.7 feet wide immediately south of where "A" avenue leads from it to the west. From a point slightly south of this intersection, to the railroad crossing north, the distance is 134 feet, and that part of the street north of the confluence with "A" avenue is known as 'Sixth street extension. Beyond the crossing the extension curves, and for more than 250 feet east and west it parallels the Missouri Pacific line, then crosses Rock Island tracks a few feet north of where Rock Island (running north-south) crosses the east-west Missouri Pacific. Beyond the Rock Island crossing is Unity Church—the objective of Mrs. Brown and Mrs. Cater when the collision occurred.

There are only two houses on Sixth street near the Missouri Pacific crossing. They are numbered 601 and 602, and are approximately 170 feet to the south. From the crossing to entrance of "A" avenue there was nothing on either side of Sixth street extension to obstruct one's views of Missouri Pacific tracks. Railroad crossing signs were conspicuous.

Mrs. Cater and Mrs. Brown, proceeding leisurely, were discussing religious services at Unity Church. With them were six children. Mrs. Cater says she was keeping a lookout while Mrs. Brown was driving, and "when we were about middleways of that little road coming into

---

[1] Acts of negligence alleged are: (a) That the switch engine was being carelessly operated over a public crossing at a time when the bell was not being rung or the whistle blown. (b) That a proper lookout was not being kept, but if such duty had been discharged peril of those riding in the Brown automobile would have been discovered in time to have avoided the collision. (c) That after discovering the peril, defendant's agents negligently failed to stop the engine in time to avoid the collision, as they could have done. (d) That, in the circumstances, the defendant was grossly negligent in not maintaining a watchman at the crossing.

Sixth street[2] from the left I saw a light, but did not know the direction from which the train was coming.'' Speed of the automobile was estimated at from ten to fifteen miles an hour. Because of dust from "A" avenue and Sixth street extension, light from the train shown dimly.

Mrs. Cater testified to having warned Mrs. Brown a train was coming, but ''she kept driving, and of course *we* were close to the crossing then, and [so was the train]. I saw [Mrs. Brown] either didn't hear me or didn't see [the train], and as they had no one out to flag us and didn't blow the whistle or ring the bell, I figured if I turned the car down the track we would miss the train; so I grabbed the steering wheel and just as I turned [it] the train hit us. . . . It dragged us up the track possibly 25 or 30 feet—I don't know exactly how far.''[3] Did not grab the steering wheel until automobile was hit.

Other witnesses testified that, immediately after the collision, Mrs. Cater said she was not hurt except for a few scratches.

Mrs. Brown testified she was driving ten or twelve miles an hour. With Mrs. Cater in the front seat was the latter's baby. In the back seat were Mrs. Brown's two children and three of Mrs. Cater's. Supposed the train was on Rock Island tracks and for that reason did not apprehend the danger. If whistle or bell had been sounded ''thinks'' she would have stopped to investigate. When witness realized the switch engine was approaching she applied brakes and turned the car slightly to the west. Mrs. Cater did not, as far as witness knew, reach over and turn the steering wheel. First realization that headlight came from engine on Missouri Pacific line was when the automobile was about fifteen feet from crossing. At that time ''switch engine was down the

---

[2] Presumably "A" avenue.

[3] Mrs. Cater testified: "At the time I first saw the light and knew the train was on the track, I called to Mrs. Brown and said, 'Mrs. Brown, the train is coming.' She didn't say anything, and of course we were still driving along very slowly and I called to her again. I said, 'Mrs. Brown, the train is coming.' If she said anything then I didn't hear her. She kept driving, and of course we were close to the crossing then and the train was right close to the crossing. I saw she either didn't hear me or didn't see it."

track—I couldn't say how far. It had not gotten to the road." [4]

Appellant's trainmen admit having seen the automobile when it was 100 feet or more from the crossing and agree with Mrs. Brown that it was proceeding slowly—probably ten or twelve miles an hour.

The locomotive had started from a switch ninety feet east of the Sixth street crossing. The conductor testified that the engineer gave two sharp blasts of the whistle as the engine got in motion. According to this witness, the automobile hit the side of the locomotive. [5]

Considering the testimony as a whole, it is certain that Mrs. Brown saw the locomotive headlight when she was more than a hundred feet from the crossing, but erroneously assumed the train was on Rock Island tracks.

A mechanic who examined the automobile after the collision found defective brakes. [6]

The court takes judicial notice of the fact that a locomotive in starting (unless on a downgrade) makes considerable noise.

The defendant is not a railroad company. Therefore, statutes applicable to railroad companies only have no application. [7]

---

[4] The following is taken from Mrs. Brown's testimony: "When I was within fifteen feet of the track and first saw the switch engine, I didn't know how fast it was moving. It was moving along very slowly itself—at slow speed. I went about fifteen feet and turned, and by that time I hit the rail and stopped. The engine hit me. Then it went just a little farther down the track. I have seen trains stop all my life, [but] I never saw one stop quicker than that." Mrs. Brown, like Mrs. Cater, saw the train headlight when the automobile was opposite "A" avenue, and thought the train was on Rock Island tracks. Mrs. Brown commented: "You see, it was awfully dusty. Cars had gone ahead of us."

[5] The engineer testified he thought the train was moving at ten miles an hour when the crossing was reached.

[6] The witness was George B. Gordon, who testified: "We found one good brake on the car, which was the left front wheel. The other brakes were no good; so the car had no stopping power."

[7] In the circumstances of the instant case it is unimportant whether liability or non-liability of the defendant rests on statutory or common law grounds. It is said (Elliott on Railroads, third edition, v. 3, § 1459) that "at common law the railway company is under obligation to exercise ordinary care to prevent collisions with travelers on the highway, and by ordinary care is meant such care as a reasonably prudent man would ordinarily exercise under the circumstances." [See *Inabnett* v. *St. Louis, Iron Mountain & Southern Railway Company*, 69 Ark. 130, at page 133; 61 S. W. 570.]

Responsible occupants of the automobile were thoroughly familiar with the crossing and its environs. They knew the railroad was used by Missouri Pacific, and by the lumber company. No signal could have conveyed to Mrs. Brown or Mrs. Cater more than the object itself—the headlight of an engine. Mrs. Cater says she realized a train was approaching and told Mrs. Brown—not once, but twice. While Mrs. Brown's negligence will not be imputed to Mrs. Cater, the latter was personally negligent in not ascertaining that Mrs. Brown became cognizant of the peril when told that a train was approaching. There was a second warning, and still no response. Mrs. Cater failed to accomplish what she says she undertook to do. The car traveled 100 feet or more while the engine headlight was in plain view.

Proximate cause of the injury was inattention upon the part of occupants of the car, and faulty brakes. The fireman was not negligent, after observing that the automobile was approaching at a low rate of speed, in assuming it would come to a stop before entering the crossing. We said in *Blytheville, Leachville & Arkansas Southern Railway Company* v. *Gessell,* 158 Ark. 569, 250 S. W. 881: "The operatives of trains have the right to assume that a traveler or a pedestrian approaching a railroad track will act in response to the dictates of ordinary prudence and the instinct of self-preservation, and will, in fact, stop before placing himself in peril, and the duty of the railroad employees to take precautions begins only when it becomes apparent that the traveler at a crossing will not do so."

This declaration of the law does not, of course, relieve operators of a railroad or those permissively using its facilities from exercising that degree of care imposed in a given case by statute or arising under the common law, but it is authority for the practical, common sense proposition that when those in control of a slow-moving locomotive see an automobile or other vehicle approaching a crossing, and the manner of approach in respect of speed and control is such that, in view of attending physical conditions (such as grade, relation of track to roadway, visibility, etc.) a normal person could, and a reason-

ably prudent person would, see the train and stop, responsibility for disaster will not be shifted to a non-offending defendant. *Missouri Pacific Railroad Company v. Harden,* 197 Ark. 899, 125 S. W. 2d 466.

Our holding is that appellee's contributory negligence was such as to bar her recovery, and the trial court should have directed a verdict for the defendant. Judgments are reversed, and the causes are dismissed.