MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* DOYLE.

4-6701                                     160 S. W. 2d 856

Opinion delivered March 30, 1942.

1112

*Thomas B. Pryor* and *Ponder & Ponder,* for appellant.

*S. L. Richardson,* for appellee.

HOLT, J. Appellees, Lenora Doyle and Roy Doyle, her husband, sued appellant, railroad company. Lenora Doyle sought to recover for personal injuries growing out of a collision between a freight train of appellant and a Chevrolet automobile which she was driving, in the town of Hoxie, Arkansas, at about six o'clock p. m., October 3, 1940. Roy Doyle sought to recover for loss of his wife's services and damages to the automobile which he owned. The allegations of negligence were (a) that appellant operated its freight train without giving signals; (b) without keeping the statutory lookout; and (c) operating the train at night without a headlight.

Appellant denied all allegations of negligence and affirmatively pleaded contributory negligence of appellee, Mrs. Doyle, as a complete bar to any recovery.

Upon a trial, and at the conclusion of all the testimony, appellees abandoned the allegation that the train was operating without a headlight, it being conceded by all parties that the headlight was burning. The court instructed the jury that the evidence showed that the operatives of the train were keeping the required lookout and took that issue from the jury, and the only issue of negligence on the part of appellant was confined by the court to the alleged failure to give any signals of the approach of the train to the crossing where the collision occurred. The jury returned a verdict in favor of Lenora Doyle in the amount of $800, and for Roy Doyle in the amount of $200. This appeal followed.

Appellant earnestly insists that the proximate cause of the collision and the consequent injuries in this case, was due solely to the negligence of appellee, Lenora Doyle, the driver of the car in question, that her negligence exceeded that of appellant, and that the trial court erred in refusing to so instruct the jury. We think this contention of appellant must be sustained.

Stating the facts in their most favorable light to appellees, they are to the effect that appellee, Mrs. Doyle, in company with Miss Scarlett, was driving her husband's (Roy Doyle) Chevrolet automobile along paved highway No. 67 by the depot in the town of Hoxie, Arkansas, at about six p. m., October 3, 1940. Mrs. Doyle drove along the highway at about 20 or 25 miles per hour (the highway paralleling appellant's railroad track and about 60 feet west of it) to a point where there is a street crossing about one block north of the depot. She turned off the pavement to the east and approached the crossing at a speed of ten or fifteen miles per hour. It was a prematurely dark, rainy afternoon and Mrs. Doyle had the headlights of her automobile burning. As she approached the crossing, she looked both ways and saw the headlight from an engine of the freight train of appellant approaching the crossing from the south, the direction of the depot. This freight train was moving about ten or fifteen miles an hour. Mrs. Doyle knew that passenger train No. 8 was stopped at the depot and she testified that she thought that the headlight on the approaching freight train was the light on the passenger engine. It is undisputed that the light on the passenger engine was not burning and that there was but one light which she saw, that from the approaching freight engine. Mrs. Doyle, after observing the headlight on the freight engine approaching the crossing, without stopping her car, drove onto the crossing and was immediately struck by the freight engine.

Miss Scarlett, her companion, heard and saw the freight train coming and jumped to safety before the collision.

As to what happened as Mrs. Doyle approached the crossing, we copy here her testimony from appellee's

brief: "A. If they had blown, or rung the bell, I would have heard it. Q. Do you recall which way you looked first as you made the turn there at Ring's crossing, that is, to the south or to the north, do you remember? A. Oh, I looked south. Q. Did you see anything down there then; did you see any lights of any kind? A. Yes, I saw a headlight. Q. Where did that headlight look to you to be at that time? A. About one-third of the way between the depot and Ring's. Q. Is that in the vicinity of where you knew that No. 8 engine had stopped? A. Just exactly where I thought it stopped. Q. Did you see one light or two lights? A. I saw one.

"I slowed down considerably, to about ten miles per hour, to make the turn and proceeded toward the tracks at that speed. When I saw that one light, I thought No. 8 had stopped. He would give a 'highball' to leave and it would be plenty of time for me to cross. I then looked to the north. At the very last minute I decided that light was moving, but it was as close from me as from here to the jury at that time, and I don't see how I could have done anything then to avoid being struck. I didn't have any brakes that would have stopped then, and I could not have turned either to the right or left and avoided the collision, but it never occurred to me to turn. Miss Scarlett had jumped from the car just before it struck.

"Q. Could you have jumped and avoided being in the collision after you saw and knew the train was coming? A. Well, I am like the captain of a ship; I believe in staying with the boat. Q. There wasn't anything you could have done about it? A. If I had jumped, I would have landed in the track, that is what I thought."

And on cross-examination, Mrs. Doyle testified: "Q. When you were within twelve feet of it, what did you do; did you make any attempt to stop your car or do anything at all? A. When I saw the light I still thought it was stopped, because when you are in front of a light you cannot see it move. . . . Q. In other words, you were about twelve feet from the track and you were going about ten miles an hour when you saw the light was moving and you were doing your best to stop, and

your front wheels got on the crossing before you could stop your car, is that correct? A. I had thought clear until the very last minute that it was the passenger light, and I had thought I would get across until the very last minute when I saw the light was moving. Q. In other words, even when you saw it down there you were willing to take a chance and thought that you could get across the track in safety until you realized that the engine was coming so close to you, and then you began to try to stop it, is that correct? A. Yes.''

Miss Scarlett testified that she did not remember whether she heard any whistle or bell, but heard the train and jumped out of the car when she saw the engine on the freight train nearing this crossing.

There was other evidence on behalf of appellees of a corroborative nature.

The record reflects that the operatives of the freight train were keeping a proper lookout, as was found by the trial court.

While the doctrine of comparative negligence applies here, it is our view that on the testimony of appellees that not only was Mrs. Doyle's negligence greater than that of appellant, but in fact that the proximate cause of the collision and the resulting injuries was the negligence of Mrs. Doyle.

It is undisputed that she drove upon the crossing after she had been warned in ample time of the approaching freight train by the brightly burning headlight on the engine. There was but one light approaching. The light on No. 8, the passenger train, was not burning.

We must take notice also of the fact that a heavy freight train moving at the rate of ten to fifteen miles per hour creates a noise which, with but the slightest attention, could be heard for many city blocks.

We have many times held that the purpose of giving signals is to warn the traveler of the approach of a train, but when the traveler has this knowledge otherwise, warning signals cease to be factors. In *Chicago, R. I. & Pac. Ry. Co.* v. *Sullivan*, 193 Ark. 491, 101 S. W. 2d 175, this

court said: ''The object of signals is to notify people of the coming of a train. Where they have that knowledge otherwise, signals cease to be factors.''

In the instant case, even though the statutory signals were not given, this was not the proximate cause of the injuries complained of, for the reason that Mrs. Doyle admitted that she saw the headlight from the train and it was moving as it approached the crossing. Under these circumstances it was her duty, in the exercise of ordinary care for her own safety, to stop her car, and this she admits she failed to do.

As was said in the case of *Bradley* v. *Missouri Pac. Rd. Co.,* 288 Fed. 484, and cited with approval by this court in *St. Louis-S. F. Ry. Co.* v. *Horn,* 168 Ark. 191, 269 S. W. 576: ''The only reasonable inference that can be drawn from their conduct is that they did not look, or, if they did and saw the train, deliberately took the chance of beating it over the crossing. If the former, they were guilty of gross negligence—if the latter, gross recklessness. If parties driving automobiles persist in gambling with death at railroad crossings, their estates should not be augmented by damages if *death win.* Care, not chance, is the requisite at railroad crossings.''

And in the very recent case of *Missouri Pac. Rd. Co.* v. *Hood,* 199 Ark. 520, 135 S. W. 2d 329, we said: ''The one thing conclusive in this case, if there were nothing else, is that every witness upon the scene or in the vicinity where the accident occurred testified the engine approached the crossing with headlight burning. The conclusion is irresistible that Mr. Hood either failed to look east, the direction from which the train came, and on that account did not see the train or headlight, or that he looked and saw the headlight just as everybody else did. (Citing cases.)''

The operatives of the train testified that they did all in their power to stop the train after they discovered Mrs. Doyle's perilous position. The fireman testified that he saw Mrs. Doyle's car coming on highway No. 67 about thirty feet from the railroad track and noticed her start to turn off the highway and thought she was going to

clear the pavement and stop, but when he saw that she made no effort to stop the car, he told the engineer to place the brakes in emergency and "everything we could do to stop as quickly as possible was done." The engineer testified that he did not see the car as it came to the crossing; that the fireman hollered to him to stop at once, giving him the emergency signal, and that he immediately did everything in his power to stop the train.

We agree with the trial court that there is no evidence in the record contradicting the testimony of appellant's witnesses that the required lookout was kept. In *Blytheville, L. & A. So. Ry. Co.* v. *Gessell,* 158 Ark. 569, 250 S. W. 881, this court said: "The operatives of trains have the right to assume that a traveler or a pedestrian approaching a railroad track will act in response to the dictates of ordinary prudence and the instinct of self-preservation, and will, in fact, stop before placing himself in peril, and the duty of the railroad employees to take precautions begins only when it becomes apparent that the traveler at a crossing will not do so." See, also, *Crossett Lumber Co.* v. *Cater,* 201 Ark. 432, 144 S. W. 2d 1074.

For the error indicated, the judgment is reversed, and since the cause seems to have been fully developed, it is dismissed.

HUMPHREYS, J., dissents.