**Arlis WAGNON, Plaintiff,**

v.

**KANSAS CITY SOUTHERN RAILWAY COMPANY, Defendant.**

**Civ. A. No. 800.**

United States District Court
W. D. Arkansas,
Texarkana Division.

April 12, 1962.

Dennis K. Williams, Boyd Tackett, Texarkana, Ark., for plaintiff.

Hardin, Barton & Hardin, Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The original complaint of plaintiff was filed in the Sevier Circuit Court on August 30, 1961. In due time the cause was removed to this court, and the original answer was filed October 4, 1961. A demand for a jury trial was filed by plaintiff October 7, 1961.

Soon after the original complaint was filed the attorney representing the plaintiff withdrew, and the present attorneys were selected by the plaintiff. On November 17, 1961, an amended complaint was filed, in which plaintiff alleged that on March 8, 1951, at approximately 8:00 o'clock p. m. he was driving his 1961 Chevrolet pickup truck in a westerly direction along East Stilwell Street in the City of DeQueen, Sevier County, Arkansas; that he was traveling at a moderate rate of speed and was exercising due care and caution for the safety of himself and others; that he was involved in a collision with a train operated by the defendant and traveling in a northerly direction; and which was being operated in a negligent and careless manner by the agents and employees of the defendant.

Specifically the plaintiff alleged that the defendant's carelessness and negli-gence were a proximate cause of plaintiff's injuries and damages herein complained of in that the defendant's agents and employees were negligent and careless, as follows:

"(1) Defendant was traveling at a fast and unreasonable rate of speed under the circumstances and conditions.

"(2) Defendant did not maintain a proper lookout as required by law.

"(3) Defendant did not sound the statutory constant warning as required by law as the train approached said crossing.

"(4) Defendant's flasher lights at said crossing were not operating as the engine approached the public street or highway.

"(5) Defendant's warning bells at said crossing were not operating as the train approached the crossing and public street or highway.

"(6) Defendant had no watchman to operate the warning bells and flasher lights or to give signals as the train approached the crossing and public street or highway.

"(7) Defendant operated said engine or train without proper headlights.

"(8) Defendant did not have the proper lookout sign posted for the crossing and public street or highway."

On February 19, 1962, plaintiff filed an amendment to the amended complaint, and alleged:

"(9) Defendant did not have the proper warning devices at this crossing and public street or highway.

"(10) Defendant did not have flagmen, watchmen, gongs, lights or similar warning devices at this abnormally dangerous crossing which was used frequently by the public and numerous trains run thereon."

It was admitted in the answer of the defendant that at the time of the collision the "plaintiff was driving a 1961 Chevrolet pickup truck in a westerly di-

rection along East Stilwell Street in the City of DeQueen, Sevier County, Arkansas, and that defendant's train was traveling in a northerly direction on its tracks and that said collision occurred at the intersection of defendant's track and East Stilwell Street" in said City.

The defendant specifically denied all other allegations contained in the amended complaint and in the amendment thereto, and for further answer alleged "that if the plaintiff was in fact injured and damaged as alleged in his complaint that said injuries and damages, if any, were caused and occasioned by reason of plaintiff's own negligence contributing thereto, and defendant pleads plaintiff's contributory negligence as a complete bar to recovery herein."

The cause was tried to a jury on March 13 and 14, 1962, and the jury returned a verdict in favor of plaintiff and fixed his damages at the sum of $6,865.00. Judgment in favor of plaintiff for the amount of damages fixed in the verdict was entered against the defendant on March 14, 1962.

At the close of plaintiff's testimony the defendant moved for a directed verdict on the following grounds:

"* * * No. 1, that the evidence presented, both documentary and oral, on behalf of the plaintiff wholly fails to prove any acts of negligence on the part of the defendant, Railway Company, its agents, servants or employees, and on the second ground, that the proof introduced by the plaintiff proves conclusively that the accident was caused and that the sole proximate cause of the accident was the negligent act of the plaintiff, Arlis Wagnon, in running his automobile—his vehicle—into the side of the train which was already across a public crossing."

The motion was not granted, and the defendant proceeded to introduce its testimony.

At the close of all of the evidence the defendant renewed its motion for a directed verdict and for its reasons stated,

"that the plaintiff has wholly failed to introduce any evidence upon which a jury could make a finding that the defendant was negligent and further that the evidence conclusively shows in this case that the plaintiff himself was guilty of negligence which was the proximate cause of this accident."

Such motion was overruled, and the case was submitted to the jury upon instructions, to which the plaintiff made no objections.

On March 22, 1962, eight days after the return of the verdict and the entry of the judgment thereon, the defendant filed its motion to have the verdict and judgment entered thereon set aside and to have judgment entered in accordance with its motion for a directed verdict.

Upon the filing of such motion the court requested the attorneys for the parties to submit briefs in support of their respective contentions. The briefs have been received, and in connection therewith the court has considered and reviewed all the testimony introduced by the parties at the trial.

In Railway Express Agency, Inc. v. Epperson, (8 Cir. 1957) 240 F.2d 189, the court, speaking through Judge Sanborn, at page 193 said:

"Rule 50(a) of the Federal Rules of Civil Procedure provides: 'A motion for a directed verdict shall state the specific grounds therefor.' This provision was declaratory of what had long been the law. See Mansfield Hardwood Lumber Co. v. Horton, 8 Cir., 32 F.2d 851, 852–853; Ayers v. United States, 8 Cir., 58 F.2d 607, 608–609. There was nothing specific about the grounds stated by defendant's counsel in his motion for a directed verdict. It is apparent, however, that the trial judge knew what counsel was driving at. So once again we shall accept intent for performance."

The court further said:

"* * * It must be kept in mind that, in reviewing the adequacy of the evidence to sustain the verdict

for the plaintiff, he is entitled to the benefit of every reasonable inference which can be drawn from the evidence, viewed in the aspect most favorable to him. See Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Svenson v. Mutual Life Ins. Co. of New York, 8 Cir., 87 F.2d 441, 442; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 439.

"The question of negligence is usually for the jury. It is only where the evidence is so one-sided that all reasonable men must draw the same conclusion from it that the question becomes one of law for the court; and where inconsistent inferences reasonably may be drawn from the evidence, it is for the jury, and not the court, to determine which inference shall be drawn. Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 860."

In Chicago, R. I. & Pac. R. Co. v. Kinard, (8 Cir., March 5, 1962), 299 F. 2d 829, the court had under consideration the motions of appellant (defendant) for a directed verdict, and Judge Vogel, speaking for the court, said:

"A resolution of the issues requires that the evidence presented at the trial before a jury be recited here in some detail. A great deal of evidence was uncontradicted. Where conflicts arise, however, we must take that view which tends to support the jury's verdict in favor of the plaintiff and must accept all reasonable inferences arising therefrom which tend to sustain such verdict."

Jurisdiction of the court is based upon diversity and the amount involved. The law of the State of Arkansas is controlling.

As held by Judge Vogel in the Kinard case, supra, the court, in determining whether a verdict should have been directed for the defendant, must consider the record and the testimony with the rule above stated in mind.

The plaintiff, Arlis Wagnon, at the time of the trial was 30 years old, was married, and was the father of three children. He and his wife and children lived west of DeQueen, Arkansas, just across the line in Oklahoma, where he operated a beer tavern. On the night before the collision he placed his wife in a hospital at DeQueen, Arkansas, where she gave birth to a baby boy about 8:00 o'clock a. m. on March 8, the date of the accident. After the baby was born he returned home and slept several hours, and then worked in the tavern until time for the evening meal, when he drove to Eagletown, Oklahoma, a distance of approximately six miles further west, and had his evening meal at the home of his father-in-law. After they had eaten the evening meal, he and his father-in-law drove to DeQueen where they visited his wife and the newborn baby. The hospital is situated approximately a mile west of the defendant's railroad tracks in DeQueen, and after the plaintiff and his father-in-law had visited at the hospital the plaintiff drove from the hospital to the place of business of his brother, which is located approximately 2,000 feet east of the crossing where the collision occurred. In going to his brother's place of business, they crossed the defendant's railroad tracks at the same place where the collision occurred. After remaining at his brother's place for a short time, they left to return to their respective homes, approximately 16 miles west of DeQueen on U. S. Highway 70.

The plaintiff had been familiar with the crossing for approximately 12 years. Likewise, his father-in-law, Lonnie Todd, who was riding in the pickup was familiar with the crossing. It is the main railroad crossing in the City of DeQueen. They were traveling west along U. S. Highway 70, which is also Stilwell Street of the City of DeQueen. The night was clear and the pavement was dry. There are four tracks running north and south across Stilwell Street or U. S. Highway 70. In crossing the tracks driving westerly, the first two tracks are side tracks,

then the main line, and then about 30 feet west of the main line, extending in the same direction, the fourth track designated as the house track or siding is located.

The depot at DeQueen is about 300 feet north of the crossing and on the west side of the main track between the side track and the main track.

In going from his brother's place of business east of the crossing, the plaintiff first crossed four railroad tracks belonging to the DeQueen & Eastern Railway Co., which were approximately 900 feet east of the tracks of the defendant. As he approached the D&E crossing, he was following a Crown Coach passenger bus which was being immediately followed by a private automobile. The bus and the following automobile stopped for the D&E tracks, and while stopped or after the bus had begun to move slowly toward the west, the plaintiff passed the bus and had reached the west end of a bridge across a small creek approximately 250 feet east of the main line before he was able to return to the north traffic lane or to the right lane. From that point to the crossing the street or highway makes a slight curve to the right, but the plat introduced by agreement discloses that the curve is not sufficient to constitute any hazard whatsoever. From the west end of the bridge across the creek a person driving westerly could see a train approaching from the south, as was the train involved, 100 feet south of the south edge of the highway or street. At a distance of 150 feet from the main line a driver could see a train approaching 135 feet south of the south line of the road or street. At a distance of 80 feet east of the main line, a person driving as was the plaintiff had an unlimited view to the south.

The street or highway was paved and was a two-lane highway, but of ample width for meeting and passing other vehicles on the crossing. There was a railroad crossing sign on the right-hand side of the street or highway and on the east side of the first side track. However, the lower half of one of the cross-bars had been broken at the time but the sign otherwise was undisturbed.

On the west side of the main line and on the south side of the street or highway was likewise another railroad crossing sign which was in good repair. There was also approximately at the same place a signal device 12.2 feet high, which was so constructed that when a train approached a reflector showed and the sign moved backward and forward and swung in and out. It was plainly visible to a person traveling from the east to the west unless a train was on the crossing, or between the approaching traveler from the east and such wig-wag sign. The device also had a bell that rang at the same time the reflector moved backward and forward, and the plaintiff testified that he was normally able to hear the bell ringing.

There was a slight incline from a distance of approximately 150 feet east of the tracks west to the tracks, but the incline did not in any wise interfere with the visibility of a person approaching from the east.

At the time of the trial there had been no change in the crossing or in the signs and signal devices other than the City of DeQueen installed a new street lighting system and installed a cluster of vapor lights on either side of the street.

The plaintiff was entirely familiar with the physical characteristics of the crossing, and testified that it was "pretty rough" but that automobiles drove over it at normal speed and that he "didn't have to slacken" speed to get over the crossing without being shaken up.

The only obstruction which could possibly interfere with a traveler's view to the south from which the train was approaching was a building designated as Southern Ice Plant, the west wall of which was 80 feet east of the main line, but the building did not obscure the view of the plaintiff in any manner other than as hereinbefore set forth.

Prior to reaching the crossing the train passed over two or three other grade crossings, at which it gave the usual sig-

nals by whistle and by bell, and as it approached the crossing in question the whistle was being sounded and the bell was ringing. The train was traveling at approximately 15 miles per hour since it was scheduled to stop approximately 300 feet north of the crossing at the passenger station. The train was equipped with a standard headlight, and in addition thereto was equipped with an oscillating light which threw rays of light into the atmosphere and on all sides as the train traveled, yet neither the plaintiff nor his passenger, Lonnie Todd, saw the headlight or the oscillating light, or heard the bell ringing or the whistle sounding. They did not hear the noise of the train as it approached the crossing. The plaintiff testified that there wasn't much that he could say about how the collision occurred other than that he was driving along and all at once he discovered that he was within a very few feet of the train, the engine of which was passing over the crossing, that he didn't have time to do anything, and drove into the rear part of the engine as it was passing over the crossing. The same testimony was given by the passenger, Lonnie Todd. He said that he was looking straight down the road and didn't see the train, didn't hear any signal, never saw the headlights, and the first that he knew that the train was in the vicinity was when the car was within a very few feet of the locomotive that was passing over the crossing.

The headlights on the Chevrolet pickup were in good order and so were the brakes. There was no testimony to show that it was traveling in excess of 20 or 25 miles per hour and without doubt could have been stopped before reaching the crossing had the plaintiff or his passenger, Lonnie Todd, seen or heard the train approaching.

The above facts are established by the testimony of the plaintiff and his passenger.

The testimony was uncontradicted that the engineer in charge of the locomotive was keeping a lookout as the train approached the crossing. The statutory signals were being sounded, and the train was moving at a moderate speed preparatory to stopping at the passenger station. In fact, the crews of trains operating on the road change at DeQueen, and the one in charge of the train as it approached the crossing was due to go off duty.

The driver of the passenger bus which the plaintiff passed at or near the D&E railroad tracks and at least one passenger thereon testified that they heard the train approaching, and the bus stopped opposite a Texaco Service Station situated on the north side of the street or highway and at a point approximately 150 feet east of the main line. About the time the bus stopped the plaintiff, without stopping and apparently without checking the speed of the truck, struck the engine of the train. Some three or four young men were standing in front of the Texaco Service Station and saw the plaintiff as he was driving toward the crossing, saw the train, heard the train signals as well as the stationary signal device, and saw the plaintiff strike the engine when it was passing over or almost over the crossing.

In short, the uncontradicted testimony established that the plaintiff was well acquainted with the crossing. He had crossed it only a few minutes before while on his way to his brother's place of business. He had been familiar with it for at least 12 years, and everyone else in the vicinity heard the signals being given by the train of its approach, saw and heard the stationary signal device situated on the west side of the main line and on the south edge of the street or highway. There was nothing to prevent the plaintiff and his passenger from seeing and hearing what the other witnesses saw and heard.

The plaintiff in opposition to the motions for directed verdict contends that the crossing was extraordinarily hazardous, and that it was the duty of the defendant to give special warning that a train was blocking the crossing, but the testimony does not disclose that the crossing was any more hazardous than the great majority of grade crossings.

The fact that there was a very slight incline from the east to the west as one approached the crossing did not in anywise contribute to the collision, nor did the fact that there were street lights and other lights in the City of DeQueen west of the crossing contribute in any wise to the collision. But, notwithstanding the uncontradicted facts, the plaintiff cites the case of Hawkins v. Mo. Pac. R. Co., Thompson, Trustee, 1950, 217 Ark. 42, 228 S.W.2d 642, and relies upon the statement contained in that opinion to the effect that the court has not laid down a rule of law that a plaintiff can never recover when his automobile is driven onto a highway-railroad crossing into the side of a train. The court further said at page 46 of 217 Ark., at page 644 of 228 S.W.2d:

"* * * We have not chosen to disregard the governing abstract principles of negligence and contributory negligence to the extent of saying that there never will be a crossing collision of that sort in which the railroad company or its employees are guilty of negligence, nor have we said that injured plaintiffs figuring in such collisions will always and invariably, in every case that arises, be guilty of negligence equal to or greater than that of the defendant railroad."

One of the grounds of negligence alleged by plaintiff was that the employees in charge of the train did not maintain a constant lookout as required by Ark.Stat.Ann., Sec. 73–1002 (1947), now superseded by Ark.Stat.Ann., Sec. 73–1002 (1961 Supp.). The court did not submit to the jury the question of whether the statutory lookout had been kept for the reason that the uncontradicted testimony showed that the lookout was kept, and in such a case the court was not entitled to submit the question to the jury for its consideration. See Overstreet v. Mo. Pac. R. Co., (W.D.Ark. 1961), 195 F.Supp. 542, pp. 551–552.

After further considering the testimony and giving to the plaintiff the benefit of every reasonable inference which can be drawn from the evidence, viewed in the aspect most favorable to him, the court is of the opinion that the sole and proximate cause of the collision and consequent damages was the negligence of the plaintiff himself in failing to use ordinary care for the safety of himself and his passenger in approaching and going upon the crossing that was at that time occupied by the engine pulling the train.

In Mo. Pac. R. Co., Thompson, Trustee, v. Doyle, 1942, 203 Ark. 1111, 160 S.W.2d 856, the court at page 1116 of 203 Ark., at page 858 of 160 S.W.2d, said:

"As was said in the case of Bradley v. Missouri Pac. R. Co., 8 Cir., 288 F. 484, 486, and cited with approval by this court in St. Louis-S. F. R. Co. v. Horn, 168 Ark. 191, 197, 269 S.W. 576: 'The only reasonable inference that can be drawn from their conduct is that they did not look, or, if they did and saw the train, deliberately took the chance of beating it over the crossing. If the former, they were guilty of gross negligence—if the latter, gross recklessness. If parties driving automobiles persist in gambling with death at railroad crossings, their estates should not be augmented by damages if death wins. Care, not chance, is the requisite at railroad crossings'."

For other cases see Overstreet v. Mo. Pac. R. Co., supra, beginning on page 553, of 195 F.Supp.

Judge Vogel, in Chicago, R. I. & P. R. Co. v. Kinard, 8 Cir., March 5, 1962, 299 F.2d 829, carefully and thoroughly reviewed and considered all the decisions of the Supreme Court of Arkansas applicable and controlling in the instant case, and it is unnecessary for this court to say more than to cite that case as conclusive and determinative of the issues herein.

Accordingly, the motion of defendant to have the verdict and judgment entered thereon set aside and to have judgment entered in accordance with the motion should be granted, and judgment sustaining the motion is being entered today.