CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v.

BARBARA GIPSON

5-4797                                               439 S.W. 2d 931

Opinion Delivered March 10, 1969

[Supplemental Opinion on denial of Rehearing delivered May 12, 1969, p. 967.]

*Wright, Lindsey & Jennings* by *William R. Overton* for appellant.

*Howell, Price & Worsham* for appellee.

CARLETON HARRIS, Chief Justice.    This is a railroad crossing accident case.    Mrs. Barbara Gipson, a 24-year-old housewife, was driving her husband's 1953 Studebaker pickup truck with her two daughters, ages 3 and 2, as passengers, on May 26, 1965, about 9:30 a.m. Mrs. Gipson stopped the truck at a railroad crossing in the town of Bigelow, Arkansas.    She then attempted to start the truck, but it would not start; however, as she was trying to start it, the truck rolled onto the

tracks.[1] She again attempted to start it, but the starter just "grinded," and about the same time she heard an approaching train. Mrs. Gipson tried once more to start the truck, concluded that it was not going to start, and got out. She threw both little girls from the vehicle, and all reached a position of safety, but one of the children attempted to run back to the truck as the train neared the crossing. Mrs. Gipson ran after the child, and the train struck the front part of the truck and knocked it against appellee, who sustained injuries. Suit was instituted against the railroad, and on trial, the jury found Mrs. Gipson 20% negligent, the railway company 80% negligent, the engineer guilty of no negligence, and Mrs. Gipson's damages were assessed at $50,000.00, the amount sought in the complaint. From a judgment entered in the amount of $40,000.00, appellant brings this appeal. Five different contentions are urged for reversal. Since we are of the opinion that the court erred in refusing to direct a verdict for appellant, there is no need to discuss the other alleged errors.

Appellee's case is founded upon contentions that the train crew did not keep a proper lookout; that the employees of the company negligently failed to sound the whistle or ring the bell to warn of the train's approach; that high weeds and grass were permitted to grow along the right-of-way to such a height as to prevent appellee from seeing the train; and that the crossing was abnormally dangerous.

There is testimony that the train crew failed to sound a whistle or bell, and also testimony that these warnings were given; and there is testimony pro and con relative to the other contentions. However, it is not really pertinent to a determination of this lawsuit

---

[1] "Well, I pulled up to the track and I stopped and the truck died and I tried to start it and the starter was under the clutch and when I tried to start it it rolled forward and I heard the train then..." The front end of the truck protruded out upon the track.

whether the whistle and bell were sounded in time to give warning; whether a proper lookout was maintained by the railroad employees; or whether there is evidentiary support for the other allegations of negligence, for it is uncontradicted that Mrs. Gipson knew the train was coming while she was still sitting in the truck on the track. Her knowledge that the train was approaching is the controlling and determinative fact in this litigation, for any failure on the part of appellant to properly warn could not have been the proximate cause of the injuries complained of. In *Missouri Pacific Railroad Company, Thompson, Trustee* v. *Doyle,* 203 Ark. 1111, 160 S.W. 2d 856 (1942), we said:

> "In the instant case, even though the statutory signals were not given, this was not the proximate case of the injuries complained of, for the reason that Mrs. Doyle admitted that she saw the headlight from the train and it was moving as it approached the crossing. Under these circumstances it was her duty, in the exercise of ordinary care for her own safety, to stop her car, and this she admits she failed to do."

In *Missouri Pacific Railroad Company, Thompson, Trustee* v. *Carruthers, Adeno,* 204 Ark. 419, 162 S.W. 2d 912 (1942), the court said:

> "* * * The statute, § 11135 of Pope's Digest requires railroad companies to ring the bell or blow the whistle at crossings, that is, to do one or the other, beginning 80 rods away, and to continue until the crossing is passed. We have held in many cases that these statutory signals cease to be factors and that no recovery can be had for failure to give them when the presence of the train is plainly discoverable by other means, the latest being the Howard case."

In *Missouri Pacific Railroad Company, Thompson,*

*Trustee* v. *Dennis, Admr.,* 205 Ark. 28, 166 S.W. 2d 886, it was stated:

> "In the instant case, even though the statutory signals were not given, this was not the proximate cause of the collision and consequent damages. As we have indicated, it was Isaac Dennis' negligence in failing to look that caused his death. In the recent case of *Mo. Pacific Ry. Co.* v. *Doyle,* 203 Ark. 1111, 160 S.W. 2d 856, we said: 'We have many times held that the purpose of giving signals is to warn the traveler of the approach of a train, but when the traveler has this knowledge otherwise warning signals cease to be factors. In *Chicago, R. I. & Pac. Ry. Co.* v. *Sullivan,* 193 Ark. 491, 101 S.W. 2d 175, this court said: ''The object of signals is to notify people of the coming of a train. Where they have that knowledge otherwise, signals cease to be factors.' ' "

In *Kansas City Southern Railway Company* v. *Baker,* 233 Ark. 610, 346 S.W. 2d 215, it was contended by appellee that there was sufficient testimony to sustain a finding that the statutory signals, required of the train crew, were not sounded. Two persons testified that, though they were in a position to have heard the signals had they been sounded, they heard none.[2] In reversing a judgment for appellee, we again said:

> "But it is not necessary to decide this point at this time because in the case at bar Mrs. Baker cannot recover, even though no signals were given, because if she saw the train approaching and walked in front of it, there can be no recovery regardless of whether the statutory signals were sounded.

[2]One person testified to the same. thing in this case, while two residents of Bigelow and the train crew testified that the whistle was blown in plenty of time. Mrs. Zelma Wilson testified that the train "started whistling before it passed our house, and we got alarmed when it kept whistling before it hit the truck." She lived in Fouche, a mile from Bigelow.

There is direct and circumstantial evidence that Mrs. Baker did see the train and tried to cross in front of it. There is no substantial evidence to the contrary. In the case of *Missouri Pacific R.R. v. Doyle,* 203 Ark. 1111, 160 S.W. 2d 856, this Court said: 'We have many times held that the purpose of giving signals is to warn the traveler of the approach of a train, but when the traveler has this knowledge otherwise, warning signals cease to be factors.' "

The testimony of appellee herself establishes that she was well aware of the approach of the train before the accident occurred, and, in fact, had reached a place of safety, together with the children, until one child started back to the truck. After testifying that she tried to start the vehicle once after hearing the train, she said she got out of the truck onto the ground; then "I got Suzanne and threw her and I got Pamela and threw her." She stated that the children had reached a safe place, and she had reached a safe place, and all three would have been out of the way if one of the children had not started back toward the truck. When this happened, Mrs. Gipson ran to pull the child back, and she was thus in a position of danger when the train reached the crossing.

Of course, the mother, in going back for the child, did what any parent would do, for a normal parent would, without hesitation, risk injury if it appeared that one of the children was in danger. Though that be true—the railroad company cannot be held responsible because a person chooses to place himself in a position of peril. Appellee argues in her brief:

"The jury might well have concluded that had the railroad kept a proper lookout, applying the brakes sooner and before impact so as to slow down the advance of the train, or had the railroad given the required warning by sounding the whistle con-

tinously for a quarter of a mile prior to reaching the crossing, the appellee would have had sufficient time to have fled to safety, or that impact would not have been as violent so as to spin the truck around and knock it into her.''

This, of course, is pure speculation—but we do know, from the mouth of appellee, that she had earlier reached a place of safety, and was only injured because she voluntarily returned toward the tracks.

Reversed and dismissed.

BYRD, J., concurs.

CONLEY BYRD, Justice.    I do not agree with the majority that Mrs. Gipson had reached a place of safety. I do think there was error in the giving of the instructions on lookout and abnormally dangerous crossing. The only evidence on lookout is that the train crew saw the vehicle just as soon as it could possibly be seen after the train rounded the blind curve.    With respect to the abnormally dangerous crossing, it is difficult to understand how it should be applied to a stalled vehicle.

However on the matter of the sounding of the whistle and bell, there was evidence from which the jury could have found that they were not sounded in time to give a warning to Mrs. Gipson since her view of the train was obstructed by a blind curve.    For this reason I would remand for a new trial rather than a dismissal.