St. Louis-San Francisco Railway Co. et al. *v.* Brunner.

4-4594

Opinion delivered April 12, 1937.

938

J. W. Jamison, E. L. Westbrooke, Jr., and E. L. Westbrooke, for appellants.

Fred H. Stafford, for appellee.

HUMPHREYS, J.   This is an appeal from a judgment for $400 against appellant in favor of appellee rendered in the circuit court of Poinsett county, for negligently killing a negro boy eleven years old on a switch track at Marked Tree at a public crossing known as the Carson Street Crossing.  The negligence alleged was the failure of the employees operating the short freight train as it approached said crossing to keep a lookout or to sound the whistle or to ring the bell on the engine.

The defense interposed to the action was that the boy was a trespasser on its switch track, and was asleep under one of its freight cars standing on the track one hundred feet or more from the crossing and so concealed at the time of his injury that he could not have been seen notwithstanding a proper lookout for persons and property on the track was kept by the employees of the railroad.

At the conclusion of the testimony the appellant requested the court to instruct a verdict for it on the ground that there was no substantial evidence introduced by appellee tending to show that the boy was killed at said crossing, or that its employees failed to give the statutory signals as the train approached the crossing or failed to keep a lookout for passengers or property on its track.

The sole question, therefore, to be determined on this appeal is whether there is any substantial evidence in the record tending to show that the boy was killed by the train at said crossing, and whether the operators of the train gave the required statutory signals as the train approached the crossing, and whether they kept a proper lookout to discover persons or property on said track.

Section 8568 of Crawford & Moses' Digest is as follows: "It shall be the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed." Section 8559 of Crawford & Moses' Digest is as follows:

"A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive or engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street, and be kept ringing or whistling until it shall have crossed said road or street, under a penalty of two hundred dollars for every neglect, to be paid by the corporation owning the railroad, one-half thereof to go to the informer and the other half to the county; and the corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

Carson street runs north and south and is a hundred feet wide and is surfaced with gravel. The switch track runs east and west across the street, and is a straight track for a considerable distance in both directions from the crossing. A platform is on the north side of the track immediately east of the street. There is a highway paralleling the railroad from Marked Tree to Lepanto. It is a short distance south of the railroad. The boy was killed a short time before or a short time

after the noon hour on the 19th day of October, 1934. This was a bright clear day. There was nothing to obstruct the view of those operating the train for a hundred feet or more in either direction from the crossing as the train approached the crossing and crossed same for the purpose of removing three freight cars standing about a hundred feet east of the crossing. There is some conflict in the testimony as to whether the boy was killed on the first trip the train made to get the three cars or the second trip it made to take in an oil tank or car. The second trip was made about an hour after the first trip.

Precilla Baily, the mother of the boy, testified that as she was going to work on the day the boy was killed she met him coming back home from his work, and in order to get home the most direct way he would have to go over the Carson Street Crossing. She identified a shoe and cap that were brought to her as the cap and one of the shoes of her boy which he was wearing when he was killed.

Bud Lusby testified that when the train first entered the switch track that morning it did not whistle or ring the bell as it approached the crossing; that it was backing in, and that no one was riding on the front end to control the cars, and that he did not see a brakeman on the crossing to direct the movement of the train; that later when the second train entered the switch track the train crew called him over to see the boy, and for the purpose of identifying him; that the brakeman asked the boy who he was, and he replied "Precilla's boy"; that the boy was conscious and talked, but soon thereafter died; that the boy lived twenty-five or thirty minutes after he got there, that he picked up one of the boy's shoes ten or twelve feet back toward Marked Tree from where the boy was lying; that he gave the shoe to the boy's stepfather; that the cap was found near the shoe.

Abe Bryant testified that the shoe was found at the end of the platform or where the platform joined Carson street, which was the end of the platform nearest Marked Tree.

Kyle Jones testified that between ten and eleven o'clock a. m., the day the boy was killed, he was driving in a car toward Marked Tree and observed a switch train backing toward Carson street crossing; that he heard no bell or whistle; that he observed and recognized Lawrence Thompson coming toward the crossing and saw him jump back; that later witness came back and saw the boy lying on the track dead about ten or fifteen feet from the crossing toward Lepanto; that he had been killed by the train; that he observed blood where he was lying; that a crowd was there, and that he helped pick him up and remove him from the track. The testimony detailed above was substantial in character and tended to show that the boy was killed at the crossing, and not while concealing himself or while asleep under a car which had been spotted or left standing on the track the day before more than a hundred feet above or toward Lepanto from the crossing; and also tends to show that the statutory signals were not given or a lookout kept. Had a lookout been kept there is no reason why those operating the train could not have seen the boy on the crossing and stopped the train. The train was moving slowly, there were no obstructions to prevent them from seeing the boy.

As the boy was not a licensee or trespasser, if killed on the road crossing, the authorities cited by appellant relative to the duty it owed trespassers or licensees have no application to the instant case.

The instant case is predicated upon the killing of the boy at a road crossing, and the failure of appellant and employees to keep a lookout, and to give the statutory signals when approaching the road crossing.

The issues of whether the boy was negligently killed at the road crossing by appellant, and whether its employees failed to keep a lookout and give the statutory signals, were submitted to the jury under correct instructions, and appellant is bound by the verdict and consequent judgment, as there is substantial evidence in the record to support both the verdict and judgment.

No error appearing, the judgment is affirmed.