MISSOURI PACIFIC RAILROAD COMPANY, ET AL. v.
POWELL, ET AL.

4-5176                                    120 S. W. 2d 349.

Opinion delivered October 10, 1938.

*Thomas B. Pryor* and *W. L. Curtis,* for appellants.

*Partain & Agee,* for appellees.

BAKER, J. The two cases presented upon this appeal were consolidated for purposes of trial in the circuit court, and the appeal brings up both cases and presents practically identical questions in each case.

The first of the said suits was instituted by Grant Powell, Lydia Winters, Ruth Titsworth and Jack Reynolds v. William J. McWha and Guy A. Thompson, trustee for the Missouri Pacific Railroad Company. McWha was the owner and driver of the automobile in which all the above plaintiffs were riding at the time of the accident causing this suit. The action, in so far as it related to McWha, was dismissed. It was alleged that about 10:00 p. m., on the 18th day of November, 1936, plaintiffs were riding in an automobile going along Main street in the city of Van Buren, intending to cross the railroad tracks on said street, at which place there was a large number of tracks or lines of railway belonging to the defendant. They alleged that as they approached this crossing the defendant, acting through its servants,

agents and employees, carelessly and negligently op-erated a train, consisting of an engine and several cars, over the crossing so as to cause a collision with the car in which they were riding. They allege specially that the defendant failed to have a watchman stationed at the crossing to warn plaintiffs of the approach of the train, and that said watchman, and other employees, carelessly and negligently failed to give any signal or warning to the plaintiffs, traveling upon the highway, of the approach or existence of the train, (2) that they carelessly, negligently and unlawfully failed to ring the bell or blow the whistle or give any other signal of the approach of the train, (3) that they carelessly, negligently and unlawfully failed to keep a constant lookout for persons and property on or near said crossing, and (4) that they carelessly, and negligently shoved, or caused to be moved a car of the defendant suddenly onto the said crossing immediately in front of the plaintiffs, without signal or warning.

Plaintiffs pleaded acts of negligence of McWha, the driver of the car in which they were riding, but since the action has been dismissed as to him it is now unnecessary to set forth such matters. Each pleaded the particular injuries suffered and each asked for the sum of $3,000 as compensation for the injuries received.

The other case alleged substantially the same acts of negligence on the part of the defendant, and his employees, but pleaded a slightly different condition or circumstance under which they were injured.

The plaintiffs in the second case were Norman Neal, Mrs. Neal, his wife, and Marie Titsworth. They belonged to the same party and were riding in a truck following the automobile driven by McWha. It was the intention of all the parties to go from Van Buren to a restaurant in Fort Smith, where they were going to eat together. The automobile driving in front ran into the moving box car, which it is alleged was suddenly shoved out over the crossing in front of the automobile, which was followed closely by the truck, in which the other plaintiffs were riding. When the automobile struck the

moving box car the closely following truck ran into the automobile. The truck was driven by Bill Howard. He does not sue and was not sued by the parties riding with him in the truck or by the other plaintiffs.

It is unnecessary to make a more detailed statement of the facts more elaborately pleaded, as above stated, nor do we think it will serve any useful purpose to state with great detail all the matters appearing in evidence upon trial and presented here by this record upon appeal. A considerable portion of the evidence relates to the kind and severity of the injuries suffered by the several parties, filing and maintaining these suits, but since there is no question raised as to the respective amounts of recovery, if liability has been established, there is no reason whatever to set forth any evidence in that regard.

The principal question arising upon this appeal is that of the sufficiency of the evidence to make a case of liability. We shall set forth the contentions of the respective parties by stating facts, if not excerpts from the testimony of witnesses whose statements will illustrate the issues presented to the jury for consideration and determination. In doing this, however, we cannot think it necessary to follow closely the story as detailed by any particular witness. All the occupants of the automobile testified to substantially the same facts, that Mr. McWha had worked late that night in an effort to finish a particular job, or contract, upon which he had been employed; that they had not eaten and that they were going across the river to the La Clare Restaurant, where they intended to partake of a steak supper. They were crossing the railroad tracks at perhaps the only crossing that was open at that particular time, the other main crossing having been closed because of the fact that an overhead passageway was under construction. It was estimated that they were traveling at a speed from fifteen to twenty, or twenty-five miles per hour. They also say that they were looking out for this crossing; that no train was in sight as they approached it; that no bell was ringing and no whistle was sounding; that they were giving attention to the fact that they were approaching

the crossing, and that they did not see any watchman at or near the crossing, although at that time, because of the heavy traffic on this particular street, watchmen had been maintained for sometime throughout the day and night. When they had reached a point twelve or fifteen feet distant from the main track of the railroad, a refrigerator car suddenly appeared from the left and was moved upon the crossing immediately in front of them; that every effort was made to stop the car to avoid striking the box car, the automobile having been cut or turned sharply to the right. They struck the moving box car near its middle, and was moved, or carried by the moving car a very short distance, perhaps six or eight feet. The impact, however, was such as to cause the serious injuries suffered by the several plaintiffs occupying the automobile. In like manner those who occupied the truck, which followed the automobile, testified that they were sitting in the cab looking to the front, observing the crossing as they approached it; that they heard no whistle or bell; that they saw no watchman or other person upon the track; that there were no signals warning them of danger as they approached the crossing, closely following the automobile in front. The collision of the automobile with the box car was so sudden and unexpected that the truck ran into the automobile in front, striking with considerable force, driving the automobile partly under the side of the refrigerator car. It is not clear from the evidence whether this impact of the truck and its collision with the automobile caused any particular injuries to those in the automobile, more than they had already suffered. However, those who were riding in the truck were injured solely by reason of this collision of the truck with the automobile.

The testimony of the defendant trustee, operating the railroad, is to the effect that there were an engine, tender, and eight freight cars, or refrigerator cars in a switching movement in the yards at Van Buren; that this train was being backed toward the crossing; that the bell upon the engine was an air ringer, and that it was in operation; that the whistle was sounding as they approached the crossing, but at this particular point, the

engineer, who was upon the side of the train struck by the automobile being down the track the eight car lengths, was not able to see or observe the crossing or the approach of people near it. His vision was partially obstructed by a freighthouse or warehouse, and some other buildings on the side of the track. The fireman, being on the other side of the engine, was not able to observe people driving upon the street approaching the crossing from the same direction the plaintiffs came. They testify, however, that there was a watchman upon this crossing in the center of the street, with a lantern, but across the railroad tracks from the side upon which the plaintiffs approached; that there was a brakeman with a lantern upon the same side as the plaintiffs and also that there was a brakeman riding on top the head or lead car, as it approached the crossing, with a lantern with which he could signal and control the movements of this train as it approached this crossing. Their testimony is also to the effect that the plaintiffs approached at a high rate of speed; apparently, the automobile and truck were racing toward the crossing some distance, perhaps a block away. The speed of the train in the switching movement is a matter somewhat sharply in dispute. All the plaintiffs indicate by their testimony that defendant's movements were fast or speedy to some degree, as they express their idea by saying ''it shot out in front of them.'' Some of the railway employees say the train was running from four to six miles an hour, though one of the employees estimated the speed may have been ten or twelve miles per hour.

It is argued most forcefully that this court, upon appeal, should give serious consideration to the positive statements of the railroad employees to the effect that proper signals, by sounding the whistle and ringing the bell, were given in due time and that the testimony of plaintiffs is negative in that they state that although they were observing, listening, or looking, or watching, they did not hear the bell or sound of the whistle, nor did they see any watchman, or other employees giving any signals with lights, at or near the crossing as they ap-

proached. They also testify to having normal vision and hearing; that they could or would have heard or seen signals if any were given. Such testimony has been held to be not merely negative, but positive in its character. Such was the effect of our opinion as to similar conditions in the recent case of *Missouri Pacific Rd. Co.* v. *Ward,* 195 Ark. 966, 115 S. W. 2d 835; *Missouri Pacific Rd. Co., Thompson, Trustee,* v. *Hunt,* 193 Ark. 175, 98 S. W. 2d 74.

A striking example is taken from the testimony of Mr. McWha, the driver of the automobile, in which he says substantially that he drove down this street to within a few feet of the crossing; that it was clear; that there was not a sign of any light, or anything else there; that he was driving about twenty miles an hour and got within a few feet of it when suddenly a yellow refrigerator car backed down in front of them and his first move was to swerve the car, which he did, and hit the refrigerator car about the middle. He says that he looked to see if the track was clear; that he didn't hear any bell ringing or any whistle blowing, and that he naturally believed it was a clear street crossing. When he was asked about the watchman he said he did not see a soul upon the crossing; that he was looking, and that he did not hear any signal, bell or whistle; that his hearing was normal, that it was perfect. When asked about what distance he was from the car, he answered: "It shot out there so suddenly that I couldn't tell you. I couldn't think about the distance, I had to make every effort to try to avoid hitting it, I couldn't tell you."

Bill Howard, who drove the truck following the automobile, said they were driving twenty miles an hour and were twenty-five or thirty feet behind McWha's car; that he didn't see any cars when he approached the crossing; didn't see any light or hear any bell or whistle; that McWha's car swerved and hit the box car that suddenly appeared on the crossing; that he threw on his brakes, but couldn't stop because of the dirt and gravel in the street. He also says that as they approached the crossing he didn't see any watchman there with light, although

he was looking; that there was no signal, no light, no whistle nor bell; that his hearing was good, and that he was listening.

Substantially to the same effect was the testimony of several other witnesses, who perhaps did not state with such minute detail all these facts, but the effect of which was materially the same.

The evidence of the railroad employees contradicts much of the foregoing statements and some of it is of a positive and direct character that tends to show that active attention was given to prevailing conditions at the time of the accident. Illustrative of this point is the fact that appellant argues most forcefully that Mr. Mc-Laughlin, brakeman upon the lead or head car that approached the crossing, was on top the car with a lantern, occupying that position solely to keep a lookout, and to give signals to the engineer and fireman if it became necessary to stop the car for any purpose. Those of the employees who saw the automobile and truck approaching the railroad crossing, say that they observed them back some distance, but presumed that they would stop without entering upon the crossing, and that every effort was made to attract attention of the people in the automobile and truck as soon as it was discovered they might go upon the crossing, which was at that moment entered by the train in the switching movement. In this regard, and to substantiate testimony offered by the defendant company, people who had approached this crossing from the Fort Smith side were called and testified that they observed a watchman and stopped just short of entering upon the crossing. Some of these people in that automobile testified to the fact that they saw a watchman or switchman upon the crossing on the Van Buren side using a lantern. When asked about the man riding on top of the box car that was entering upon the crossing, statements were then made that he was upon the side of the car, not upon top, but upon the Fort Smith side and not the Van Buren side.

By a more elaborately detailed statement the respective contentions might be better illustrated, but that must

seem unnecessary for the reason that the foregoing clearly denotes that there were disputed questions of fact, material to the issues, that could be properly decided only by a jury trial.

The conditions concerning which the witnesses testified, and whose testimony illustrate the sharp dispute between the parties, present no violation of natural laws, nor do they furnish any ground whereby it might be determined that such statements were so unreasonable as to be violative of well recognized principles of physics or other natural laws. No calculations of speed and distance can be resorted to so as to make the contention of either party as to any fact stated a finality to the exclusion of conflicting matters. Almost any of the statements may be true. There is argument in the briefs that if plaintiffs' contentions as to speed be considered, and calculations be made that it must be determined that plaintiffs were driving much faster than they have stated, else they might have stopped the car before the collision occurred. We think, however, from the impression gained from a consideration of the whole case, that it may be said that the switching movement of this train was perhaps somewhat faster than a majority of the witnesses testified in that regard, and it may be true, also, that the parties in the automobile and truck were moving with somewhat greater speed than they are willing at this time to concede, but all the speculation or calculation in regard to all these questions and details present questions which must ordinarily be determined by the jury and cannot at all be settled as matters of law.

The defendant argues that the plaintiffs were negligent and that their negligence was the sole cause of the injuries; that they should have stopped, looked and listened as they approached the railroad tracks, and failing to do so their negligence must be such as to deny the relief for which they prayed. This contention may be disposed of in very short order. It has already been shown that the driver of the automobile and the driver of the truck were not parties to this litigation at the time of the trial. Neither had sued the railroad com-

pany, but McWha had been sued. The suit against Mc-Wha had probably been dismissed on account of the guest statute. Not only the drivers of these motor vehicles testified that they were looking and listening as they approached this crossing, but these several parties who have sued also testified to the same effect, that they were each keeping a lookout for lights and listening for other signals. There is little evidence that these several plaintiffs might have done anything more than they did do as the crossing was approached, but if there was anything they should have done, and did not do which made them guilty of contributory negligence, that was a jury question. It was not a matter of law.

It seems that it ought to be sufficient in disposing of this matter to suggest that contributory negligence under § 11153, Pope's Digest, is not an absolute defense. The act itself so provides. So the numerous authorities cited by the appellant on the question of any contributory negligence of the plaintiffs would appear not to be applicable in this case. It would not be profitable to take these numerous authorities and make an analysis of them and show the fact that each is without substantial force under the conditions here prevailing.

It is also argued with great insistence that since the principal matters of negligence alleged by the plaintiffs are the failure to ring the bell and sound the whistle, and that under certain recent decisions of this court, the giving of these signals became unimportant since the proof established the fact that the automobile was driven into the side of this freight train.

We are perfectly willing to give full effect to those several cases illustrative of the rule contended for by the appellant company on this appeal. Counsel wholly misconceives the effect of the principle announced. One of these cases is *Lowden et al., Trustees, C. R. I. & P. Ry. Co.* v. *Quimby*, 192 Ark. 307, 90 S. W. 2d 984. In this case the driver of the automobile drove his car head on into the side of the box car standing upon a crossing. Had he been looking he could have seen it as he approached the crossing for a sufficient distance to have enabled him

to have stopped the car and avoid the collision. So, also, in the case of *Gillenwater* v. *Baldwin et al., Trustees, Mo. Pac. Rd. Co.,* 192 Ark. 447, 93 S. W. 2d 658.

There are other authorities to the same effect, and in these the court has declared that the train occupying the crossing is notice to parties approaching in an automobile, but the conditions in those cases are quite different from the facts presented in this case. It is true that the automobile struck the head or lead car in the side, or near the middle, but it may also be said in explanation of the accident that this car was suddenly moved in front of the automobile as it was attempting to go over the crossing. If this train or number of cars had, prior to the approach of plaintiffs, been put over the crossing, or had been standing there, or even moving over the crossing as these parties approached, the bulk of these box cars and refrigerator cars would have been a more potent signal than the ringing of any bell or the sounding of any whistle.

Therefore, such cases as the *Kansas City Southern Ry. Co.* v. *Briggs,* 193 Ark. 311, 99 S. W. 2d 579, and *C. R. I. & P. Ry. Co.* v. *Sullivan,* 193 Ark. 491, 101 S. W. 2d 175, and other cases just cited, furnish no criterion or precedent in the instant case, nor does the case of *M. P. Rd. Co.* v. *Brewer,* 193 Ark. 754, 102 S. W. 2d 538, all of which were relied upon by appellant, aid any in the settlement of the controversy here arising under entirely different conditions and situations.

It is also argued that we should give due consideration to the case of *Madison Smith Cadillac Co.* v. *Lloyd,* 184 Ark. 542, 43 S. W. 2d 729, in which it was held that in accordance with the law of the road the automobile in front has the superior right and use of the highway for the purposes of leaving it on either side, for reaching intersecting roads and passageways, and that the driver behind, in handling his car, must do so in recognition of that superior right of the traveler in front. Appellant cites, also, the case of *Lockhart* v. *Ross,* 191 Ark. 743, 87 S. W. 2d 73, upon the same point.

In those cases there was a controversy concerning the correlative rights arising out of the fact that one car was following closely upon another, and in so doing injury was thereby caused to the persons in some of the cars. There is no controversy here between the people occupying the truck and the automobile. All the people occupying the truck and automobile are insisting that the accident arose not out of the fact of the correlative rights of persons riding in the two motor vehicles, but by reason of the wrongful conduct of the defendant and its employees, in suddenly blocking the passageway.

The appellant in its fourth subdivision of its brief. argues the failure of the court to give certain instructions to be error. The appellant again is in error in insisting upon these instructions as being proper at the time they were offered. The purpose of the instructions was to determine the question of liability upon the proposition that plaintiffs, to recover, must have been free from negligence. We have already disposed of this matter by calling attention to the fact that contributory negligence is not an absolute defense under § 11153, Pope's Digest. The court in the trial of this case gave due consideration to the effect of negligence on the part of the plaintiffs and gave instructions which were not objected to, or, at least, which are not presented and argued as erroneous at this time, in relation to what is known as the comparative negligence doctrine, and these instructions submitted clearly to the jury matters to be determined, and to the effect that if the accidents were caused or contributed to by the negligence of the plaintiffs, and that such negligence of the plaintiffs was equal to and exceeded that of the defendant and his employees, then there could be no recovery. This was the most favorable presentation of this question that defendant had a right to insist upon.

In the fifth subdivision of appellant's brief he argues that the instruction given by the court to the effect that if the defendant's servants and employees in charge of his train carelessly or negligently failed to ring the bell or blow the whistle for a distance of eighty rods as it

approached the crossing, this fact, if proven, might be taken into consideration by the jury in determining whether the defendant was guilty of negligence. When this instruction was offered an objection was made that the train was less than eighty rods from the crossing, and, on that account, the instruction was objectionable. The instruction was then amended, after objection was made, so as to read "that if the employees in charge of defendant's train carelessly and negligently failed to ring the bell and blow the whistle as it approached the crossing and within eighty rods thereof, or within any distance of the crossing, where said train may have been less than eighty rods therefrom, then you may take this fact into consideration, etc."

Defendant seriously argues that the law of giving signals does not apply to switching movements, and that this is particularly true in regard to the statutory requirement about ringing bells or sounding the whistle. This is urged for the reason that it is contended that the law requiring the giving of these signals applies only to trains as they pass from station to station, and not to engines and cuts of cars in switching movements in the yards. These questions have been disposed of so long ago that they now appear as being somewhat unique.

Without further argument, it may be said that they are settled by the case cited below. *St. Louis-San Francisco Ry. Co. v. Brunner*, 193 Ark. 937, 104 S. W. 2d 214. Besides § 11135, Pope's Digest, provides for these signals where the railroad shall "cross any other road or street."

Other matters are mentioned in this brief of appellant rather insistently followed up with argument and citation, but we think that it would unduly prolong and extend this discussion to set all these forth in detail and dispose of them as we have the foregoing matters. We have given due consideration to every controversy presented, both as to instructions given and those refused, and we find them without substantial merit as tending to prejudice the rights of the defendant in any respect.

This appeal presents a record that has brought on a somewhat tedious discussion, but one that is more than ordinarily free from even a suggestion of error. The questions of fact were properly presented to and decided by the jury, and the verdicts are conclusive upon us.

The several judgments are, therefore, affirmed.