CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY *v.* SPARKS, ADMR.

4-9763                                     248 S. W. 2d 371

Opinion delivered April 21, 1952.

Rehearing denied May 26, 1952.

*J. F. Holtzendorff* and *Wright, Harrison, Lindsey & Upton,* for appellant.

*John D. Eldridge, Jr.,* and *John D. Thweatt,* for appellee.

WARD, J. This appeal involves a daylight railroad-crossing fatal accident and the sole question is whether the negligence of the deceased exceeded the negligence of the railroad company.

The deceased, J. H. Harris, was killed between one and two o'clock P. M. on the 12th of December, 1950, while attempting to cross the tracks of appellant company in Biscoe. The railroad track runs east and west, and deceased was driving north, slightly northeast, in his truck on the gravel highway No. 33, when the front of his truck struck the front end of appellant's Diesel engine. The engineer on this engine controlled another Diesel just to the rear, and both engines were pulling 46 cars at a speed of approximately 50 miles per hour. Immediately prior to the collision the deceased was driving his truck at a slow speed, perhaps not exceeding eight to twelve miles per hour.

The surroundings were such that the deceased, who was familiar with the crossing, could have had a clear vision down the track to the east for a distance of about 300 feet when he was within 82 feet of the south rail, but previous to his reaching that point his vision would have been obscured by two trees and a building on his right. There is a slight upgrade in highway No. 33 as it approaches the tracks from the south.

The jury returned a verdict in favor of the appellee in the amount of $10,000, hence this appeal. The amount of the judgment is not in question.

The administrator's complaint alleged three grounds of negligence, *viz:* 1. The failure to comply with the lookout statute (Ark. Stats. § 73-1002); 2. Excessive speed; and 3. Failure to sound the whistle and ring the

bell as required by Ark. Stats., § 73-716. At the close of all the testimony the court, with no objections, held that plaintiff had not made a jury question on the first two grounds, but did allow the cause to be submitted on the question of whether the whistle was sounded and the bell was rung. Appellant urges two grounds for a reversal which we now discuss in order.

I.

It is first contended that there is no substantial evidence to support the finding of the jury that neither of the statutory signals was given. We cannot agree with this contention notwithstanding that there was positive testimony by the engineer and brakeman and several disinterested by-standers that the signals were given. One witness, in the soft drink business, stated that he was standing close to the crossing, saw the engine as it approached, and did not hear the whistle sound. A groceryman was in his store about 350 feet from the crossing but did not hear the train whistle, and another man similarly situated heard only one "toot". One resident of Biscoe, 61 years of age, heard a whistle blow and in five or six seconds heard the crash. Another groceryman was in his store which was located near the track some 350 or 400 feet east of the crossing, and, though he heard the train passing, he heard no whistle. A post office clerk whose duty required him to be near the track and was looking at the train at the time heard the whistle sound one blast at the signal block [which was about 300 feet east of the crossing] and in a few seconds he saw the train begin to make a sudden stop. One lady who was standing near the track about 250 feet east of the crossing said she was looking at the truck as the train went by her and she heard no whistle or bell sounding from that moment until the collision occurred. Therefore, regardless of what our opinion might be as to the relative weight of the evidence on either side, it is apparent that there is substantial evidence to present a jury question, and, under the often announced rule of this court, the determination of the jury on this point will not be disturbed.

## II.

The next ground for a reversal is expressed by appellant in these words: "If it be determined that there was substantial evidence neither of the signals was given, as a matter of law failure to give signals was not approximate cause, or, as a matter of law the negligence of appellee's intestate was equal to or greater than any negligence of appellants."

It is argued, and it may be conceded, that if the deceased had stopped his car and looked for the train or had just looked for the train while approaching the track in a careful manner, he would have been able to see it in time to have avoided the collision. On the other hand it must be conceded that if appellant had caused the whistle to blow and/or the bell to ring continuously as provided in Ark. Stats. § 73-716 it possibly would have attracted the deceased's attention and avoided the accident. Thus, since both appellant and the deceased were negligent, the difficult question arises as to which one was more negligent. To put the question in legal phraseology, which one's negligence was the greater. The answer to this question cannot be determined with mathematical precision, and, as will be later seen, it has resulted in some difficulty if not confusion to the courts.

It can be argued with considerable force that this case should be reversed on the authority and reasoning in some of our former decisions, such as: *Mo. Pac. Railroad Co., Thompson, Trustee,* v. *Doyle,* 203 Ark. 1111, 160 S. W. 2d 856; *Mo. Pac. Railroad Co., Thompson, Trustee,* v. *Howard,* 204 Ark. 253, 161 S. W. 2d 759. See, also, *Louisiana & Arkansas Ry. Co.* v. *Smith,* (Ark.), 133 Fed. 2d 436. In the last cited case we find this language:

". . . where it is apparent from the evidence that plaintiff did not see the train because he did not look for it at a time when he was in a position to see its approach and to determine if he could proceed with safety, then his failure to so act, and not the failure of the train crew to give the signals, was the proximate cause of the accident."

From the second cited case we quote this language:

"Had she stopped, before reaching the main line track, she could have heard the train, and had she looked after easing by the obstruction she could have seen it. It was there, making a loud noise, whether the whistle was blown or the bell rung, and signals cease to be factors where the presence of the train is plainly discoverable by other means. Thus her own negligence was the proximate cause of her injury, if any, which is doubtful."

This language is quoted from the first cited case:

"We must take notice also of the fact that a heavy freight train moving at the rate of ten to fifteen miles per hour creates a noise which, with but the slightest attention, could be heard for many city blocks.

"We have many times held that the purpose of giving signals is to warn the traveler of the approach of a train, but when the traveler has this knowledge otherwise, warning signals cease to be factors. . . . The object of signals is to notify people of the coming of a train. Where they have that knowledge otherwise, signals cease to be factors."

It will be seen from a full reading of the above cases that this court answered the question as to whose negligence was the greater or was the proximate cause of the accident. It was recognized, as stated in the *Smith* case, *supra*, "that each [crossing collision case] must be tried in view of the prevailing facts and circumstances, and the result must be tested by accepted principles of law". There are some facts in each of the cited cases which distinguish them, not too clearly, from the case at bar. In the *Doyle* case the plaintiff saw the head light of a train approaching, but thought it was standing still; in the *Howard* case the plaintiff tried to beat the train to the crossing after the situation became dangerous; and in the *Howard* case and the *Smith* case there were obstructions close to the tracks which, the court said, presented dangers which called for greater precautions.

It is our view that the facts and circumstances in the case at bar present, at least, a doubtful question as

to whose negligence was the proximate cause of the collision, and that the better rule is to leave the answer to the jury, as was done here and under proper instructions on that point.

The view expressed above is in harmony with the decision in *Smith, Admx.* v. *Missouri Pacific Ry. Co.*, 208 Ark. 40, 184 S. W. 2d 951, where the facts were similar to this case. The lower court, instructing a verdict in favor of the railroad company, announced as a matter of law "that the negligence of the intestate was equal to, or greater than, that of the railroad company. . . ." On appeal we reversed the trial judge and held that the question should have been submitted to the jury, using this language:

"In any case, as in that one, where no reasonable grounds for a difference of opinion existed, that the negligence of the injured party was equal to or greater than that of the operatives of the train, the court should direct a verdict in favor of the railroad company, although the railroad company was not free from negligence, but if there is room for an honest and intelligent difference of opinion, the jury should be permitted to compare the negligence and should be given an instruction approved in the recent case of *Mo. Pac. R. Co.* v. *Walden*, 207 Ark. 437, 181 S. W. 2d 24, which would require the damages to be reduced in the proportion which the negligence of the injured party bore to the negligence of the railroad company."

In this same case the court also said that "a note of the bell, or a blast of the whistle would have given intestate the warning which the statute requires, and might have awakened him from his lethargy and averted the collision. . . ."

Another case in which the facts and issues were similar to those in the case before us here is *St. Louis-San Francisco Ry. Co., Thompson, Trustee,* v. *McCarn,* 212 Ark. 287, 205 S. W. 2d 704. It was there contended by the railroad company, on appeal, that the lower court erred in submitting the question of comparative negligence to the jury. In affirming the lower court we said:

"If it be conceded that the evidence showed that the driver of the car in which appellee's intestate was riding was guilty of negligence, we are also of the view that the evidence shows that the Railroad Company was also guilty of negligence. A situation was therefore presented in which it became necessary for the negligence to be compared."

We also quoted with approval the following:

"Since there is room for an honest and intelligent difference of opinion as to the degrees of negligence on the part of the parties, the jury should have been permitted to compare this negligence under an instruction requiring the damages to be reduced in the proportion which the negligence of appellant's intestate bore to the negligence of appellee."

It is not contended here that the jury was not properly instructed on the question of the comparative negligence of deceased and the railroad company, and since the jury must have found that the negligence of the latter exceeded that of the former the case is affirmed.