HENRY KOCH, ADMINISTRATOR ET AL v. MISSOURI PACIFIC RAILROAD COMPANY ET AL

5-5294 455 S. W. 2d 858

Opinion delivered June 29, 1970

*Sexton & Wiggins* and *Jack Yates*, for appellants.

*Boyce Love,* for appellees.

CONLEY BYRD, Justice. This appeal involves a colli-

sion at a railroad crossing. The jury returned a verdict for appellees Missouri Pacific Railroad Company and Roy R. Brown, the engineer, upon which judgment was entered. For reversal appellants Henry Koch, Administrator of the Estate of Phillip E. Haralson, deceased, and Marie Koch assert only that, "The trial court erred in the giving of an instruction which excused the railroad from the performance of its statutory duties."

The instruction, to which only a general objection was made, provides:

"When the presence of a train approaching or occupying a crossing is readily discoverable by means other than lights, signals or flag men, then the failure to have crossing lights, crossing signals or a flag man at the crossing and the failure of the train men to ring the bell or blow the whistle are not relevant factors for your consideration."

Our cases hold that a general objection is good only if the instruction is inherently erroneous—*i. e.,* the instruction could not be correct under any circumstance.

The partial record here shows that decedent was driving a dump truck with a gross weight of 35 tons at a speed of approximately 30 miles per hour. The train was traveling at approximately 40 miles per hour. Decedent struck the first boxcar behind the engine. The witnesses testified that decedent's view was unobstructed, that a person who wanted to see could see the train. Admittedly some witnesses testified that the train whistle was blowing and that the other statutory signals had been given. There was also evidence to the contrary. Other evidence indicated that the brakes were faulty on the truck decedent was driving.

Our cases hold that the purpose of requiring a railroad to give signals is to warn the traveler of the approach of a train but that when the traveler other-

wise has knowledge of the approach of a train, warning signals cease to be factors. Under those circumstances the failure to give the signals cannot be a proximate cause of the collision. See *St. Louis & San Francisco Railroad Company* v. *Ferrell*, 84 Ark. 270, 105 S. W. 263 (1907); *Chicago, Rock Island & Pacific Railway Company* v. *Sullivan*, 193 Ark. 491, 101 S. W. 2d 175 (1937); and *Missouri Pacific Railroad Company* v. *Dennis*, 205 Ark. 28, 166 S. W. 2d 886 (1942). Consequently an instruction is not inherently erroneous when it tells a jury under what circumstances the failure to give warning signals ceases to be a proximate cause of a collision at a railroad crossing.

It has been suggested, however, that the instruction here is inherently erroneous because it uses "readily discoverable" instead of "plainly discoverable" or some other such descriptive term. While we must admit that the instruction, above set out, is not a model instruction, it appears to us that any defect with respect to the phrase "readily discoverable" should be reached by a specific objection. If the court's attention had been called thereto, the alleged defect could have been corrected merely by the substitution of a phrase or another adverb.

For the reasons herein stated the judgment is affirmed.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. The basis of my disagreement with the majority lies in my feeling that the instruction of which complaint is made is inherently erroneous, so that a general objection would reach the defect I find. Consideration of the evidence in the particular case is not helpful, because I agree that an instruction is not inherently erroneous unless it would be an incorrect statement of the law under any circumstances. I think this one is, although some apparent support for it may be found in language of some of our opinions taken out of context.

In evaluating this instruction, I think that appellant makes an appropriate argument when he contends that it told the jury that the railroad was excused from giving the statutory signals if the presence of the approaching train *could* have been discovered by other means. This really says that, as a matter of law, one who is negligent in failing to discover the approach of a train to a crossing is at least as negligent as the train crew who failed to give the signals required by statute. I do not believe that this is the law. If it is, it certainly puts operators of railroads in a legal position not enjoyed by anyone else.

In considering this question, it is necessary that attention be given to the evolution of rules pertaining to the relationship between failure of a train crew to give the required signals and crossing collisions. The rule which the circuit court applied through the questioned instruction originated in cases where the crossing was blocked by a train at the time of the collision or the injured party otherwise *knew* that the train was approaching the crossing. One of the earliest cases was *St. Louis & S. F. Ry. Co.* v. *Ferrell,* 84 Ark. 270, 105 S. W. 263.[1] In that case, the decedent knew the train was coming but stumbled and fell in the path of the train as he was running to cross the tracks. We found that the decedent's guilt of contributory negligence would defeat the action by decedent's administratrix. We also said that where there was *knowledge* of the coming of the train, signals ceased to be factors. We held that the case was improperly submitted to the jury. No question of instructions was involved. See also, *C. R. I. & P. Ry. Co.* v. *Sullivan,* 193 Ark. 491, 101 S. W. 2d 175;[2] *Missouri Pac. R. Co.* v. *Moore,* 199

---

[1]This case was soon distinguished from one where there was at least a question of fact whether one walking across railroad tracks *knew* that the train was approaching. *Chicago, R. I. & P. Ry. Co.* v. *Elzen,* 132 Ark. 431, 200 S. W. 1000.

[2]This case was distinguished in *Missouri Pac. R. Co.* v. *Powell,* 196 Ark. 834, 120 S. W. 2d 349, where we found a jury question when an auto struck a train which may not have been occupying the crossing when the automobile approached.

Ark. 1035, 138 S. W. 2d 384; *Missouri Pac. R. Co.* v. *Doyle,* 203 Ark. 1111, 160 S. W. 2d 856;[3] *Kansas City Southern Ry. Co.* v. *Baker,* 233 Ark. 610, 346 S. W. 2d 215; *Chicago, R. I. & P. R. Co.* v. *Gipson,* 246 Ark. 296, 439 S. W. 2d 931.

There followed a line of cases in which we held that there was no jury question when the train was obviously *blocking* the crossing at the time of the collision, because the failure to give signals *could not have been* the proximate cause of injuries and damages to one seeking to cross the tracks at the time. See *Missouri Pac. R. Co.* v. *Price,* 182 Ark. 801, 33 S. W. 2d 366; *Kansas City Southern Ry. Co.* v. *Briggs,* 193 Ark. 311, 99 S. W. 2d 579;[4] *C. R. I. & P. Ry. Co.* v. *Sullivan, supra;*[4] *St. Louis Southwestern Railway Co.* v. *Robinson,* 228 Ark. 418, 308 S. W. 2d 282.

Then came *Missouri Pac. R. Co.* v. *Brewer,* 193 Ark. 754, 102 S. W. 2d 538,[4] in which grant of a new trial after a verdict in favor of the railroad was reversed with a 4-3 division of the court. We pointed out that the trial judge had overlooked certain phases of the case and had based his granting of the motion on his view that a preponderance of the evidence established a failure of the railroad to keep a lookout. We found this position unwarranted because the evidence on the point was undisputed, but proceeded to conclude that the jury verdict was based upon comparison of the negligence of the parties. We found the appellee's testimony that he stopped 20 to 25 feet short of the crossing where his view was unobstructed, looked and listened and then proceeded into the path of a train approaching at 40 miles per hour with headlight burning was completely refuted by the physical facts. We said that notice of the approaching train *would have been apparent* to

---

[3]This case was, along with others hereinafter cited, also distinguished in *Chicago, R. I. & P. R. Co.* v. *Sparks,* 220 Ark. 412, 248 S. W. 2d 371, where a jury question was found on only slightly different evidence.

[4]These cases were also distinguished in *Missouri Pac. R. Co.* v. *Powell,* 196 Ark. 834, 120 S. W. 2d 349, even though the auto in that case struck the side of the train.

any ordinary person and that the conclusion that appellee neither looked nor listened was inescapable. Such cases as *Missouri Pac. R. Co.* v. *Sanders,* 193 Ark. 1099, 106 S. W. 2d 182 followed. In *Sanders,* we found that a verdict should have been directed for the railroad company. The reason given was that the conclusion that the negligence of appellee's intestate was the proximate cause of the fatal injuries was inescapable. We found undisputed evidence that the whistle was being blown at a point 520 feet from the crossing when the train was in plain view of one driving an automobile along the route taken by appellee's decedent and that the view of the tracks was obstructed at only one point along the path taken by the decedent, after which they were again in plain view. We said that under these circumstances the collision would not have occurred if the driver and his passenger had been taking the *slightest precaution* for their own safety.

Later we found questions for the jury as to negligence and contributory negligence under other circumstances. In one of them, *Missouri Pac. R. Co.* v. *Lemons,* 198 Ark. 1, 127 S. W. 2d 120, *Brewer* was distinguished on the basis pointed out above. In that case there was a recovery by one whose truck was struck while stalled on the railroad crossing. I find the following pertinent language in that opinion:

> * * * On the other hand, the traveler has a right to assume that the trainmen will not be guilty of negligence and that they will perform the duties imposed upon the railroad company by law. They have a right to assume that there will be a bell rung or whistle sounded before the train reaches the crossing, unless they know that it is not giving the alarms.

In another such case, where we indicated that contributory negligence would have barred recovery for property damage, we said that one approaching a crossing where the view was obscured until he reached a point 15 or 20 feet from the track, who did not know

when the train was due, had a right to assume that the railroad company would not be guilty of negligence in failing to give the signals required by statute, even though he used the crossing two or three times per month and had looked for a train in both directions as he approached the crossing. *Missouri Pac. R. Co.* v. *Howell,* 198 Ark. 956, 132 S. W. 2d 176.

Then came the decision in which we find statements which may have helped to spawn later opinions, the language of which might seem to lend support to the instruction given in the case before us. In *Missouri Pac. R. Co.* v. *Hood,* 199 Ark. 520, 135 S. W. 2d 329, we reversed a judgment against the railroad company and dismissed the case. We said that the record was without substantial dispute that the whistle was sounded at each of three crossings. The injured truck driver did not say that the statutory signals were not given and every other witness who gave any attention to the signals testified that they were. The plaintiff actually struck the rear of the engine cab 45 feet from the front of the train, even though he testified that he looked for trains in both directions before driving onto the main line track without seeing the train approaching with its headlight burning or hearing any signal. There were no obstructions to his view. We came to the conclusion that the plaintiff either failed to look in the direction from which the train came, or that he looked and saw the headlight just as everyone else did. We based our holding upon the premise that one whose faculties were sufficiently normal to drive a truck in traffic and upon railroad crossings must be regarded as having seen what others saw, hearing what others heard, and observing what others observed, when they occupied a position relatively the same as that occupied by him. Under these circumstances it was held that the failure to give the statutory signals could not have been the proximate cause.

The same idea was expressed in holding a property damage claimant guilty of contributory (not comparative) negligence which would bar his recovery as a

matter of law. *Missouri Pac. R. Co. v. Cook,* 203 Ark. 787, 158 S. W. 2d 699. We quoted from *Chicago, Rock Island & Pacific Railroad Co. v. Batsel,* 100 Ark. 526, 140 S. W. 726, as follows:

> * * * "Where the undisputed evidence shows that the injured person by looking or listening had an opportunity to see and hear the approaching train before the time of the accident, and that his opportunity was such that he could not have failed to have seen or heard the train in time to have avoided the injury if he had used ordinary care in looking and listening, then, under the law, he will be deemed to have seen and heard the train, although he should testify that he looked and listened, and did not either hear or see the train. Under such circumstances, the traveler 'is deemed to have seen or heard what is plainly to be seen or heard.' * * * Such a doctrine was applied in cases where it was broad daylight, and the engine or train in plain view, and could unquestionably have been seen if the traveler had looked in the direction whence it came."

This proposition was repeated in *Missouri Pac. R. Co. v. Dennis,* 205 Ark. 28, 166 S. W. 2d 886. It is significant that we have a case in which comparative negligence is the test, and that the court in *Cook* did not say that the railroad company was not guilty of any negligence.

Yet, we did find negligence of an automobile driver (whose personal injuries were said to be doubtful) to exceed that of the railroad, even if it were conceded that the statutory signals were not given in *Missouri Pac. R. Co. v. Howard,* 204 Ark. 253, 161 S. W. 2d 759.[5] The negligence on the part of the driver was her

---

[5]This case was distinguished in the opinion on rehearing in *Missouri Pac. R. Co. v. Diffee,* 212 Ark. 55, 65, 205 S. W. 2d 458, on the basis that in *Howard* the court found that there was not a question of fact as to which party was more negligent, but on the other hand the court found a jury question on substantial evidence as to proximate cause. This case and

failure to stop, look and listen before driving onto the crossing, when her view was obstructed to the south, from whence the train came. In this case we first find language bearing any real similarity to that of the instruction before us. We said:

> * * * Had she stopped, before reaching the main line track, she could have heard the train and had she looked, after easing by the obstruction, she could have seen it. It was there, making a loud noise, whether the whistle was blown or the bell rung, and signals cease to be factors where the presence of the train is plainly discoverable by other means.

This language is also to be found in *Missouri Pac. R. Co. v. Carruthers,* 204 Ark. 419, 162 S. W. 2d 912, where the four-judge majority found that the presence of the train could have been detected had the driver used the *slightest* care. Once again, the court said that the deceased driver either saw and heard the signals and the noise of the train and thought he could beat it across or was preoccupied and failed to see and hear what was plainly to be seen and heard and what everyone else, including his own witnesses, saw and heard.

It seems difficult to reconcile the opinion in *St. Louis S. F. Ry. Co. v. Perryman,* 213 Ark. 550, 211 S. W. 2d 647, with some of the preceding cases, and I do not think that it can be reconciled with the instruction we are considering. The appellant there relied upon *Hood, Dennis* and *Doyle,* among other cases, but we found that there was substantial evidence to present a jury question whether or not the failure of the railroad to give the statutory signals was the cause of the collision. We also held that the comparison of

---

*Doyle* are also distinguished in *Chicago, R. I. & Pac. R. Co. v. Sparks, Admr.,* 220 Ark. 412, 248 S. W. 2d 371. I find it difficult to see the distinction. In either case, it might readily be said that the driver clearly should have seen the train by which he was struck. In *Sparks,* we said that it might be conceded that if the deceased had stopped and looked or had just looked while approaching the crossing he would have been able to see the train in time to avoid the collision.

the negligence of the occupants of the car was for the jury, even though it is clear from a reading of the opinion that if they had stopped, looked and listened, they could have avoided striking the engine, as they did. We stated the question thus: Did the boys see and hear the train, or know of its approach so as to make the statutory signals unnecessary?

In order to harmonize these decisions, it seems to me that we must say that, when comparative negligence is involved in a crossing collision case, the failure of a train crew to give the statutory signals ceases to be a factor only when the presence or approach of the train was known by other means to one alleging this failure as a basis for recovery or was so obvious that the claimant cannot be heard to say that he was unaware of it. Otherwise, it seems to me that the jury is to determine proximate cause and compare the negligence.

The instruction given, however, would tell the jury, in effect, that the failure to give the signals required by statute could not be relevant if the presence or approach of the train could have been discovered by the deceased through the exercise of ordinary care on his part. I do not believe that this is the law.