ST. LOUIS SOUTHWESTERN RAILWAY
COMPANY *v.* Bruce TAYLOR and
Mrs. Bruce TAYLOR

75-73                                    525 S.W. 2d 450

Opinion delivered July 7, 1975

418

*Barrett, Wheatley, Smith & Deacon*, for appellant.

*Frierson, Walker, Snellgrove & Laser* and *Parker & Henry*, for appellees.

JOHN A. FOGLEMAN, Justice. This is a railroad crossing collision case. The railway company appeals from a $10,000 judgment in favor of appellees, saying it was entitled to a directed verdict, the court erred in submitting the alleged failure of its train crew to keep a lookout to the jury as an issue and the court erroneously gave AMI (Civil) 1801 and refused its requested instruction as to the conditions under which the failure of trainmen to give the signals required by statute became irrelevant. When we view the evidence in the light most favorable to appellees, we cannot say that there was no substantial evidence to present a jury question, both on the failure of the train crew to give the signals required by statute and on the question of maintaining the required lookout.

Taylor was driving a Dr. Pepper Bottling Company truck on the occasion of the collision, which took place at the Bethel Crossing of Highway 69 and appellant's tracks in Greene County, at about 6:30 a.m. The sun was up and the weather clear. Taylor approached the crossing and stopped 20 to 50 feet from it, looked to his right and to his left, and when he did not see a train coming, put the truck in "granny low" and eased onto the crossing. He never heard a whistle or a bell. The window on the right hand side of the track was cracked two or three inches. There was no train within his vision when he looked down the track. He had a good view for a good quarter of a mile looking to the south, the direction from which the train came. His speed was one to three miles per hour, low enough that he could have stopped if he had seen anything coming. Verneva Lloyd lived less than one-eighth mile from the crossing. She was in bed at home on the morning of the collision. She was awake and the windows in her house were partly up. She heard the roar of the train and the loud noise of the collision, but did not hear any whistle, horn or bell, although she said the whistle could be heard at her house and there was nothing to keep her from having heard it if it had been blown.

The engineer, Donald R. Johnson, testified on discovery deposition that he first saw the truck as the engine rounded a curve near Bethel, and the truck was fifty feet from the crossing and moving at a very slow speed. He said that Taylor later pulled up and stopped. Johnson said that the train's speed was 55 miles per hour and that this speed had been attained near Brookland in Craighead County. Johnson could not be sure that it was north or south of Brookland, but said it must have been north, because one would travel faster north of Brookland than south of it. After this full speed was attained, Johnson was teaching the fireman and brakeman how to check speed with a stopwatch. The stopwatch showed that 65 seconds elapsed while the train travelled from one mile post to the next and this was translated by the stopwatch operator into 55 miles per hour by looking at a chart in Johnson's lap. This operation may have been repeated three times. Both the fireman and the brakeman should have been looking at the chart, as Johnson had directed them to do so.

Corporal Maynard of the Arkansas State Police had determined that the impact to the truck driven by Taylor was on its right side about three feet from its rear. By his actual measurement the distance from the crossing to a field road to the south of it was a quarter of a mile. The curve in the railroad was near that point. He found that the view from the crossing for this distance was wide open.

The evidence recited is stated in the light most favorable to appellees and all questions of credibility, some of which may be of some consequence, are resolved against appellant. From this view, we cannot agree with appellant that, as a matter of law there was no issue on the question of negligence in failure to give the required signals. If Taylor, after looking to the south, approached the tracks from 50 feet away at two miles per hour, it would have taken 17.5 seconds to get the front end of his truck to the crossing. During that period of time, the train travelling at 55 miles per hour would have gone 1417.5 feet. When we consider that the truck had travelled a sufficient distance that it was struck only three feet from its rear end,[1] the train could have travelled a much greater distance, even giving due regard to the fact that the emergency brakes on the train were applied when the front end of the locomotive was 300 feet from the crossing. If the jury took this view of the matter, it was entirely possible that at the time Taylor looked south, the train was beyond the curve and not obvious or readily discoverable. If this was the case, the failure of the train crew to give the signals would not have become irrelevant. See *Koch* v. *Missouri Pacific Railroad Co.,* 248 Ark. 1251, 455 S.W. 2e 858.

We reach the same result on the lookout question. In this respect, the jury could have denied full weight to the testimony of the train crew. Much of appellant's case turns upon the testimony of the engineer. To say the least, his estimates of distances proved to be poor. It was shown that, on discovery deposition, he had said that the curve he rounded

---

[1] The width of the crossing and the length of the truck do not appear to have been shown. There is 4'8½" between rails on a standard gauge railroad. 15 Encyclopaedia Britannica, Macropedia, (15th Ed.) 488. It is obvious that the truck is longer than any passenger automobile, unless it be a large bus.

when he first saw the truck was only 600 or 700 feet from the crossing. At the trial he said it was 1500 feet, and that the train was 600 to 700 feet from the crossing when the truck stopped with its front wheels near a spur track west of the track on which the train was travelling. At the trial, the 50-foot distance of the truck from the crossing when Johnson said he first saw it on discovery deposition had become 200 to 300 feet. The brakeman on the right hand side of the engine, sitting in front of the fireman, never saw the truck until the engineer yelled to them to get down as the emergency brakes were applied. The brakeman said he was earlier checking speed with his own watch as they passed mileposts, did not check speed with the engineer, and the engineer did not show him how to use the chart. He did not remember whether the engineer showed the fireman or not. He did not remember whether it would have been possible for him to have seen the truck when the engine was 500 or 1000 feet from the crossing.

The fireman said the speed had been checked by stopwatch and mileposts a couple of times and that he and the engineer worked together in doing so.

The train would have travelled a total of three miles during the speed checks if three were done. Obviously, if a chart were checked after each check, the subsequent check would have to be commenced at the next milepost after that at which the prior check was stopped. Thus, from the time the stopwatch was started after the third check, the train would have travelled at least five miles while the checking was being done. If it was north of Brookland before the first check was started, and any of the engineer's time was taken in looking at the chart and demonstrating to other crew members, the train could have been at least six miles north of Brookland when the checking had been completed.

From an examination of the 1975 Highway Map of Arkansas, it appears that it is less than seven miles by rail from Brookland to the Bethel crossing. The distance was not given in evidence, but we feel that it must have been a matter of common knowledge to Greene county jurors. Judicial notice may be taken of locations and distances between towns on customary routes of travel along the state highway system,

their railroad connections and the customary routes and usual time for travel between them. 1 Whorton's Criminal Evidence 89, § 57; 1 Jones on Evidence (6th Ed.) 105, § 2.36. This court takes judicial notice of the distance of towns from the county line. *Bender* v. *State*, 202 Ark. 606, 151 S.W. 2d 668. We also take judicial notice of the map of the state and of distances between places. *Van Dalsem* v. *Inman*, 238 Ark. 237, 379 S.W. 2d 261. Courts in Arkansas generally take judicial notice of the location of cities and towns. *Herdison* v. *State*, 166 Ark. 33, 265 S.W. 84; *Cranford* v. *State*, 130 Ark. 101, 197 S.W. 19; *Lyman* v. *State*, 90 Ark. 596, 119 S.W. 1116. We also recognized that juries take cognizance of the location of towns. *Stribling* v. *State*, 171 Ark. 184, 284 S.W. 38. Judicial notice is commonly taken of official maps. *South Shore Land Company* v. *Petersen*, 226 Cal. App. 2d 725, 38 Cal. Rptr. 392 (1964). The Supreme Court of Missouri has long taken judicial notice of maps of the Missouri State Highway Commission and other official highway maps and has used them in determining questions relating to sufficiency of evidence. *Holland* v. *Anderson*, 196 S.W. 2d 175 (Mo., 1946); *State* v. *Heisller*, 324 S.W. 2d 714 (Mo., 1959); *State* v. *Garrett*, 416 S.W. 2d 116 (Mo., 1967). We have no hesitation in resorting to the map prepared and issued by the Arkansas State Highway Department in considering this issue.

The jury might well have found that a proper lookout was interfered with by the timing and teaching, so that the train crew did not start watching the Bethel crossing soon enough.

We find no error as to appellant's third point. In the first place, we do not agree with appellant that the court erred in giving AMI 1801. The evidence pointed out was sufficient to justify its being given, because we could not say, as a matter of law, that when Taylor approached the crossing and stopped and looked down the track, that the train was readily discoverable by means other than signals. As pointed out in the Comment to this instruction in AMI (Civil, 2d Ed.) p. 192, this is the only situation justifying the refusal of this instruction, when there is evidence that the signals required by statute were not given. Neither can we say that giving the signals would not have aroused Taylor from any preoccupa-

tion or inattentiveness that prevented him from seeing the approaching train.

But appellant also requested that the jury be instructed on this point as follows:

"When the presence of a train approaching a crossing is known or would have been apparent or discoverable to any ordinary person by means other than whistles or other signals, then the failure of the trainmen to blow the whistle or ring the bell are not relevant factors for your consideration."

There was conflicting testimony from which the jury could have found that Taylor stopped his truck only 20 feet from the crossing and, after looking toward the approaching train not more than 600 feet away, put his truck in gear and moved at a slow speed onto the track when the engine was about 300 feet away - so close to the crossing that it was impossible for it to be stopped before striking the truck - and that the engineer was blowing the whistle and keeping a proper lookout. It might also have believed that the train could be heard for not less than one-eighth of a mile and that two headlights were burning on the front of the engine, which was red in color. In other words, the jury might have found from the evidence that the presence or approach of the train was so obvious that Taylor cannot be heard to say that he was unaware of it.

Assuming that appellant was entitled to an instruction advising the jury under what circumstances the failure to give warning signals ceases to be a relevant factor, the instruction requested is more favorable to appellant than it would be entitled to have. Appellant relies principally upon our decision that such an instruction was not inherently erroneous in *Koch v. Missouri Pacific Railroad Company.* 248 Ark. 1251, 455 S.W. 2d 858. But in that case, we pointed out that the instruction given there was not inherently erroneous in cases where there is evidence that the traveler has knowledge of the approach of the train other than by the giving of the signals. It was also pointed out that the instruction given there was not a model one, and that the defects urged on appeal might have been

corrected if a specific objection, rather than a general one, had been made. Our decisions on the point of law involved do not seem to be entirely consistent or harmonious. See, e.g., *St. Louis & S.F. Ry. Co. v. Ferrell*, 84 Ark. 270, 105 S.W. 263; *Chicago, R.I. & P. Ry. Co. v. Elzen*, 132 Ark. 431, 200 S.W. 1000; *Missouri Pac. R. Co. v. Brewer*, 193 Ark. 754, 102 S.W. 2d 538; *Chicago, R.I. & P. Ry. Co. v. Sparks*, 220 Ark. 412, 248 S.W. 2d 371; *Missouri Pac. R. Co. v. Powell*, 196 Ark. 834, 120 S.W. 2d 349; *Missouri Pac. R. Co. v. Sanders*, 193 Ark. 1099, 106 S.W. 2d 182; *Missouri Pac. R. Co. v. Lemons*, 198 Ark. 1, 127 S.W. 2d 120; *Missouri Pac. R. Co. v. Howell*, 198 Ark. 956, 132 S.W. 2d 176; *Missouri Pac. R. Co. v. Hood*, 199 Ark. 520, 135 S.W. 2d 329; *Missouri Pac. R. Co. v. Cook*, 203 Ark. 787, 158 S.W. 2d 699; *Missouri Pac. R. Co. v. Dennis*, 205 Ark. 28, 166 S.W. 2d 886; *Missouri Pac. R. Co. v. Howard*, 204 Ark. 253, 161 S.W. 2d 759; *Missouri Pac. R. Co. v. Diffee*, 212 Ark. 55, 205 S.W. 2d 458; *Missouri Pac. R. Co. v. Carruthers*, 204 Ark. 419, 162 S.W. 2d 912; *St. Louis S.F. Ry. Co. v. Perryman*, 213 Ark. 550, 211 S.W. 2d 647.

Some of these cases may be distinguished on the basis of their involving contributory, rather than comparative negligence. Some are cases in which the injured person knew the train was approaching, but attempted to beat it over the crossing. Some are cases where the injured party's failure to look and listen was beyond dispute. Some are cases where the testimony that the signals were given was undisputed or that everyone in a position to do so, other than the party injured by the crossing collision, had seen and heard the approach of the train.

These decisions could only be harmonized by saying that, when comparative negligence is the issue, as it is here, the failure of the train crew to give the statutory signals ceases to be a relevant factor, (because it cannot be the proximate cause of the injuries) when the presence or approach of the train was known to the injured party by means other than the signals or was so obvious that he cannot be heard to say that he was unaware of it. The words "discoverable to any ordinary person" are more favorable than this to the railroad company. This means something less than obvious. It actually means to us that appellees would be barred from recovery

if Taylor had exercised ordinary care to discover the approach of the train. This would tell the jury to ban appellees from recovery if Taylor were guilty of any negligence and prevent them from comparing the negligence of Taylor and the train crew insofar as the giving of signals was concerned. This is not the law.

The judgment is affirmed.

The Chief Justice dissents.